J. WILLIAM BURNS, COMMISSIONER OF TRANS-
PORTATION *v.* JOHN P. BARRETT
(13570)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued May 2—decision released July 18, 1989

*James A. Wade,* with whom, on the brief, was *Lori B. Wilson,* for the appellant (defendant).

*Kathryn Mobley,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* acting attorney general, for the appellee (plaintiff).

SHEA, J. In this action the plaintiff commissioner of transportation sought the removal of three outdoor advertising sign structures erected by the defendant upon private property bordering interstate route 95 (I-95), two of the signs being located in East Haven and one in Bridgeport. The trial court imposed fines and granted injunctive relief with respect to the East Haven signs on the ground that they violated regulations of the department of transportation prohibiting the location of sign structures within 500 feet of a highway interchange and did not fall within any of the exceptions in the regulations. The Bridgeport sign was found not to violate any regulation and the court denied all relief with respect thereto.

The defendant has appealed from the judgment, claiming that (1) the regulations and statutes on which the court relied violate federal and state constitutional provisions[1] concerning freedom of speech, (2) the injunction issued by the trial court constitutes a prior restraint upon freedom of speech, (3) injunctive relief should have been denied, in view of the availability of statutory fines as a remedy to secure compliance, and

[1] The first amendment to the United States constitution provides in part: "Congress shall make no law . . . abridging the freedom of speech . . . ."

Article first, § 4, of the Connecticut constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

Article first, § 5, provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."

While we recognize our authority to provide greater protection for freedom of speech under our state constitutional provisions than the United States Supreme Court has found in our federal constitution, we are not persuaded that this case presents an occasion for the exercise of that authority. See *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 57–58, 469 A.2d 1201 (1984). The defendant has not in his brief argued that the textual differences between our state and federal freedom of speech provisions are of any particular significance in this case. Accordingly, our discussion is limited to the federal constitutional provisions.

(4) the court should have awarded the defendant an injunction against the plaintiff as well as damages for the losses he has incurred as a result of the actions of the plaintiff. We find no error.

After his application to the department of transportation for a permit to erect an outdoor advertising sign at Saltonstall Parkway in East Haven had been denied because the sign would have been within 500 feet of an I-95 exit ramp, the defendant nonetheless proceeded to erect the sign at that location without a permit and completed the installation in July, 1986. The sign is supported by a vertical column from which two billboard panels extend to form a V, one facing eastbound and one facing westbound traffic on I-95. The land on which the sign has been erected is owned by Torello Tire Company, Inc., which sells tires on the premises, and is situated in a commercial or industrial zone of East Haven, in which such signs are permitted. One of the sign panels bears the Torello name and advertises Goodyear tires, which the company sells. The other panel advertises the Chowder Pot Restaurant, which is located several exits south on I-95. Because the regulation prohibiting signs within 500 feet of an interchange contains an exception for those "which advertise . . . activities being conducted upon the real property where the sign is located"; Regs., Conn. State Agencies § 13a-123-7; the plaintiff commissioner concedes the legality of the Torello sign. The restaurant sign, however, does not fall within the exception for on-premises signs, and the trial court, after upholding the validity of the regulations, accordingly ordered its removal.

The defendant also erected a similar sign structure for outdoor advertising on private land adjacent to I-95 situated on Bradley Street in East Haven, after the commissioner had denied his application for a permit. This property also is located in a zone where such a use is permitted. This installation was completed about

the same time as the Saltonstall Parkway sign. One panel bears an advertisement for Red Writer, Inc., a company that conducts no activities on the premises where the sign is located. The other panel contains a picture of the American flag and a statement, "We owe a great debt to Vietnam Vets." The court found that the structure bearing both of these advertisements violated the regulation prohibiting such installations within 500 feet of an interstate highway exit and ordered removal of the entire structure.

I

The regulation relied on by the trial court was issued by the commissioner of transportation pursuant to General Statutes § 13a-123 (c)[2] and provides that "[s]ign structures may not be located within five hundred feet of an interchange . . . ." Regs., Conn. State Agencies § 13a-123-5 (b).[3] It is undisputed that the two East

---

[2] General Statutes § 13a-123 (c) provides: "The commissioner may promulgate regulations for the control of outdoor advertising structures, signs, displays and devices along interstate highways, the primary system of federal-aid highways and other limited access state highways. Such regulations shall be as, but not more, restrictive than the controls required by Title I of the Highway Beautification Act of 1965 and any amendments thereto with respect to the interstate and primary systems of federal-aid highways or the national standards of the Secretary of Commerce in respect to the interstate highways, in effect November 13, 1958, and any amendments thereto."

[3] Section 13a-123-5 of the Regulations of Connecticut State Agencies provides in part: "(b) Sign structures may not be located within five hundred feet of an interchange or rest area measured along the interstate or limited access primary highway from the sign to the nearest point of the beginning or ending of pavement widening at the exit from or entrance to the main traveled way. In any case where ramps exist only on one side of the roadway crossed by the above-mentioned highways, the five hundred foot distance shall also be measured from the centerline of the intersected roadway in the opposite direction from the ramps. The distance requirement from an interchange or rest area set forth above shall not apply within the boundaries of a municipality with a population of forty thousand or more according to the 1960 federal census if the state deems such to be consistent with customary use in the area."

Haven sign structures violate the regulation because of their location within the proscribed distance from I-95 interchanges. The defendant attacks the validity of the regulation (1) as creating an unconstitutional restriction on commercial speech, and (2) in conjunction with the exception for signs related to the premises on which a sign is located; Regs., Conn. State Agencies § 13a-123-7 (2); as unconstitutionally preferring some signs over others upon the basis of their content.

A

The Chowder Pot Restaurant and the Red Writer, Inc., advertisements that the court has ordered to be removed fall within the classification of "commercial speech," as the plaintiff concedes. "Prior to 1975 purely commercial advertisements of goods for sale were considered to be outside the protection of the First Amendment." *Metromedia, Inc.* v. *San Diego,* 453 U.S. 490, 505, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981). In *Virginia Pharmacy Board* v. *Virginia Citizens Consumer Counsel,* 425 U.S. 748, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976), the United States Supreme Court first plainly held that wholly commercial speech was constitutionally protected. The court invalidated a statute prohibiting pharmacists from advertising prescription drug prices on the ground that it unreasonably interfered with society's strong "interests in the free flow of price information," which the first amendment was designed to advance. Id., 755. "The First Amendment . . . protects commercial speech from unwarranted governmental regulation." *Metromedia, Inc.* v. *San Diego,* supra, 561. "The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." Id., 563. It has been recognized, however, that "[t]he constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hud-*

*son Gas* v. *Public Service Commission,* 447 U.S. 557, 562–63, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980).

The United States Supreme Court has "adopted a four-part test for determining the validity of government restrictions on commercial speech as distinguished from more fully protected speech. (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective." *Metromedia, Inc.* v. *San Diego,* supra, 507.

With respect to the first of these criteria, the commissioner has made no claim that the two off-premises commercial advertisements relate to any unlawful activity or are misleading. Accordingly, they qualify for constitutional protection to the extent of its availability for commercial speech.

The defendant maintains that the regulations fail to serve a significant state interest and to advance that interest directly, as the second and third criteria require. The trial court found, however, that "there was substantial evidence that commercial signs at highway interchange areas contribute to accidents." The chief transportation engineer of the department of transportation had testified: " '[I]n interchange areas, especially major highways of this type, the decision-making is very intense at this point. A driver must make up his mind . . . whether [he is] going to exit at that point or . . . going to go forward to a further destination. They have to be concerned about the driver [who] does want to exit but is in the wrong lane and may dart across their path. There are intense areas. Those are the areas that have the greatest amount of accidents on expressways.

Therefore, the regulation asking that the signs not be erected within five hundred feet of these on and off ramps is designed to clear the boards . . . and leave that area as open as possible for intelligent decision-making by the driver . . . .' " This testimony plainly supports the court's finding.

Many courts have concluded that a governmental judgment that highway billboards are traffic hazards is not manifestly unreasonable and should not be set aside. See *E. B. Elliott Advertising Co.* v. *Metropolitan Dade County,* 425 F.2d 1141, 1152 (5th Cir. 1970); *Inhabitants, Town of Boothbay* v. *National Advertising Co.,* 347 A.2d 419, 422 (Me. 1975); *General Outdoor Advertising Co.* v. *Department of Public Works,* 289 Mass. 149, 180–81, 193 N.E. 799 (1935); *In re Opinion of the Justices,* 103 N.H. 268, 270, 169 A.2d 762 (1961); *Stuckey's Stores, Inc.* v. *O'Cheskey,* 93 N.M. 312, 321, 600 P.2d 258 (1979); *New York State Thruway Authority* v. *Ashley Motor Court, Inc.,* 10 N.Y.2d 151, 155–56, 218 N.Y.S.2d 640, 176 N.E.2d 566 (1961); *Newman Signs, Inc.* v. *Hjelle,* 268 N.W.2d 741, 757 (N.D. 1978); *Ghaster Properties, Inc.* v. *Preston,* 176 Ohio St. 425, 438, 200 N.E.2d 328 (1964); *Lubbock Poster Co.* v. *Lubbock,* 569 S.W.2d 935, 939 (Tex. Civ. App. 1978); *State* v. *Lotze,* 92 Wash. 2d 52, 59, 593 P.2d 811, appeal dismissed, 444 U.S. 921, 100 S. Ct. 257, 62 L. Ed. 2d 177 (1979); *Markham Advertising Co.* v. *Washington,* 73 Wash. 2d 405, 420–21, 439 P.2d 248 (1968); but see *John Donnelly & Sons* v. *Campbell,* 639 F.2d 6, 11 (1st Cir. 1980); *Metromedia, Inc.* v. *Des Plaines,* 26 Ill. App. 3d 942, 946, 326 N.E.2d 59 (1975); *State ex rel. Dept. of Transportation* v. *Pile,* 603 P.2d 337, 343 (Okla. 1979). Even at a time when motor vehicles moved more slowly, this court observed that "[highway billboards] may obstruct the view of operators of automobiles on the highway and may distract their attention from their driving. . . ." *Murphy, Inc.* v. *Westport,* 131 Conn.

292, 295, 40 A.2d 177 (1944). "We . . . hesitate to disagree with the accumulated, common-sense judgments of . . . lawmakers and of many reviewing courts that billboards are real and substantial hazards to traffic safety." *Metromedia, Inc.* v. *San Diego*, supra, 509; see *Railway Express Agency, Inc.* v. *New York*, 336 U.S. 106, 69 S. Ct. 463, 93 L. Ed. 533 (1949).

There can be little doubt that public safety on the highway is a substantial governmental interest. A regulation restricting the location of billboards designed to be seen by motorists traveling at high speeds on a highway such as I-95 by excluding such distractions from especially hazardous areas where vehicles enter or leave the highway may reasonably be viewed as implementing that interest and directly advancing it. The defendant, in attacking this conclusion of the trial court, points to an exception in the regulation providing that "[t]he distance requirement from an interchange . . . shall not apply within the boundaries of a municipality with a population of forty thousand or more according to the 1960 federal census if the state deems such to be consistent with customary use in the area." Regs., Conn. State Agencies § 13a-123-5. According to the defendant, the inapplicability of the regulation to more densely populated towns is an implicit acknowledgment that restricting billboards in such areas, even though traffic hazards are likely to be greater, would improve highway safety only minimally. We do not agree that the failure of the restriction to apply to all municipalities where it would promote traffic safety diminishes its efficacy in advancing that objective in areas where it does apply, such as those involved in this case. Even if the defendant were making an equal protection claim, "[t]here is nothing in the constitution . . . that requires the state to subordinate or compromise its legitimate interests solely to create a more comprehensive program than it already has." *Faraci* v. *Connect-*

*icut Light & Power Co.,* 211 Conn. 166, 172, 558 A.2d 234 (1989). Whatever may be the reasons for excepting more populous areas from the regulation, the omission does not refute the conclusion of the trial court that the regulation does enhance highway safety in the areas where the defendant has been enjoined to remove the signs he has erected in violation of the regulation.

The trial court also found that the regulation satisfied the fourth *Metromedia, Inc.* criterion, that the restriction reach "no further than necessary to accomplish the given objective"; *Metromedia, Inc.* v. *San Diego,* supra, 507; concluding that the regulation was "narrowly drawn" to achieve "the important objectives of traffic safety and esthetics . . . ."[4] The defendant disputes this conclusion, contending that the restriction leaves open no alternative channels for communication with such a significant audience as the motoring public. He relies upon *Linmark Associates, Inc.* v. *Willingboro,* 431 U.S. 85, 97 S. Ct. 1614, 52 L. Ed. 2d 155 (1977), in which an ordinance prohibiting on-site "For sale" and "Sold" signs was invalidated because it eliminated a particularly effective medium of commercial speech, leaving only more expensive and less efficient media available. In the present case, however, the restriction cannot be characterized as a complete ban on a standard means of communication, such as outdoor advertising, or an insurmountable barrier to reaching motorists. It is applicable only to signs within 500 feet of interchanges, leaving the remainder of the highway available for outdoor advertising, unless some

---

[4] The trial court found that the regulation prohibiting billboards near highway interchanges served "the important objectives of traffic safety and esthetics." We limit our discussion to traffic safety, upon which the court primarily relied and upon which substantial evidence was presented at trial. We leave to another time the question of whether esthetic considerations alone would support the validity of a restriction upon billboards located in industrial areas.

other regulation prohibits it. As we have previously noted, the regulation also exempts more populous municipalities from its operation. It applies only to "interstate highways, limited access federal-aid primary highways, the limited access state highways and non-limited access federal-aid primary highways." Regs., Conn. State Agencies § 13a-123-1. The defendant is left free to erect outdoor advertising signs, even off-premises signs, along extensive stretches of our highway system. In true perspective, the restriction imposed by this regulation on the defendant's ability to communicate must be regarded as minimal. We agree with the trial court that it goes no further than necessary to achieve the important governmental purpose of reducing the risk of highway accidents at interchange areas. With respect to his commercial signs, therefore, the defendant has failed to demonstrate that the challenged regulation infringes upon his right of freedom of speech.

B

The remaining sign the defendant was ordered to remove was that containing his statement concerning the debt we owe to veterans of the war in Vietnam. The right to display such a political message falls classically within the protection of the first amendment and any justification for its curtailment must be greater than for a restriction on commercial speech. *Metromedia, Inc.* v. *San Diego,* supra, 506. Nevertheless, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron* v. *International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981). Reasonable time, place and manner regulations affecting speech that further significant government interests and are not overbroad have long been upheld as valid. *Grayned* v. *Rockford,* 408 U.S. 104, 115, 92 S. Ct. 2294,

33 L. Ed. 2d 222 (1972). "Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection." *Cox* v. *New Hampshire,* 312 U.S. 569, 574, 61 S. Ct. 762, 85 L. Ed. 104 (1941).

As we have previously explained, the state's interest in highway safety, especially at the more hazardous interchange areas, is quite substantial. We conclude that it is sufficiently great to justify prohibiting noncommercial billboards within 500 feet of a highway interchange as well as those bearing commercial advertisements. The higher level of state interest required for restrictions on noncommercial speech is adequately met here because of the widespread belief that billboard advertisements, both commercial and noncommercial, are distracting to motorists and threaten public safety in areas where vehicles travel at very high speeds. Indeed, noncommercial messages may be more distracting because they are usually more interesting.

"A major criterion for a valid time, place, and manner restriction is that the restriction 'may not be based upon either the content or subject matter of speech.' " *Heffron* v. *International Society for Krishna Consciousness, Inc.,* supra, 648, quoting *Consolidated Edison Co.* v. *Public Service Commission,* 447 U.S. 530, 536, 100 S. Ct. 2326, 65 L. Ed. 2d 319 (1980). The defendant contends that the state's regulatory scheme does not satisfy this standard but favors commercial speech over noncommercial speech by creating the exception in the regulation for on-premises signs that "advertise . . . activities being conducted upon the real property where the signs are located." Regs., Conn. Agencies § 13a-123-7 (2).[5] The language of this provision cor-

[5] Section 13a-123-7 of the Regulations of Connecticut State Agencies provides in part: "Erection and maintenance of the following signs may be

responds closely to the exception contained in General Statutes § 13a-123 (e) (3) for "signs, displays and devices advertising activities conducted on the property on which they are located." The defendant argues that a regulation permitting Torello Tire Company, Inc., to advertise the tires it sells on the premises where the sign is located, but preventing the defendant from airing a political opinion unrelated to any activity conducted at the site of the Vietnam veteran sign, is an impermissible content-based restriction on speech. We disagree with this contention.

This court on several occasions has observed that any governmental regulation affecting speech must be content-neutral. *French* v. *Amalgamated Local Union 376*, 203 Conn. 624, 633, 526 A.2d 861 (1987); *Husti* v. *Zuckerman Property Enterprises, Ltd.*, 199 Conn. 575, 581, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 373 (1986); *Friedson* v. *Westport*, 181 Conn. 230, 236, 435 A.2d 17 (1980). The defendant claims that the exception for on-premises signs made by the statute and regulation is equivalent to a preference for commercial signs, because "there is no similar exemption for noncommercial signs." He apparently assumes that no noncommercial signs can be permitted near highway interchanges under the requirement of the regulation that on-premises signs

permitted in protected areas . . . (2) On premises signs: Signs not prohibited by state or local law which are consistent with the applicable provisions of this section and sections 13a-123-4 and 13a-123-13 and which advertise the sale or lease of, or activities being conducted upon, the real property where the signs are located. Not more than one such sign advertising the sale or lease of the same property may be permitted under this section in such a manner as to be visible to traffic proceeding in any one direction on any interstate or federal-aid primary highway. Not more than one such sign, visible to traffic proceeding in any one direction on any one interstate or federal-aid primary highway, and advertising activities being conducted upon the real property where the sign is located, may be permitted under this section more than fifty feet from the advertised activity. Signs permitted under this section may display trade names."

"advertise . . . activities being conducted upon, the real property where the signs are located." We construe the regulation, however, to include in the exception for on-premises signs those relating to noncommercial as well as commercial activities located on the premises, such as those of a hospital, church, club, political organization or other noncommercial institution. For example, if some organization of veterans were located on the premises where the defendant has placed his sign concerning Vietnam veterans, the requisite relationship between the sign and activities conducted on the premises would exist. Such a noncommercial message could also be sponsored by a business conducted on the site of the sign for the purpose of advertising the business, since many advertisements contain statements of public interest not directly related to the wares sold by the sponsor but intended to attract attention or create good will for its benefit. The exception for on-premises signs, therefore, does not authorize the state to limit in any manner the content of signs erected by those conducting activities on the premises so long as the signs have some reasonable relationship to those activities.

The defendant relies upon *Metromedia, Inc.* v. *San Diego,* supra, in which a general prohibition against outdoor advertising signs throughout the city contained an on-site sign exemption. This provision permitted on-site signs, defined as those "designating the name of the owner or occupant of the premises upon which such signs are placed, or identifying such premises; or signs advertising goods manufactured or produced or services rendered on the premises upon which such signs are placed." Id., 494. The court viewed this definition as creating "a broad exception for onsite commercial advertisements, but . . . no similar exception for noncommercial speech," thereby inverting the constitutional priorities. Id., 513. "Insofar as the city tolerates

billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." Id.

Our interpretation of the on-site exception in this case, however, does not create any preference for commercial messages. Anyone conducting any activity on property where a sign is to be erected may display either commercial or noncommercial advertisements that have some reasonable relationship to an activity conducted thereon. We need not explore the extremes to which advertising signs must go before they can be deemed not to relate to activities being conducted on the premises, because in this case the defendant does not claim that any activity is being carried on at the location of the Vietnam veterans sign.

The defendant also relies upon *Adams Outdoor Advertising* v. *Newport News,* 236 Va. 370, 373 S.E.2d 917 (1988), in which a municipal ordinance banning off-premises signs, with specified exemptions, but permitting all on-premises signs bearing either commercial or noncommercial messages, was declared unconstitutional. The court, however, appears to have based its decision on the exemptions contained in the statute for various signs, depending upon their content, whether the signs were located on or off the premises, such as directional signs, civic or cultural event signs, and displays used for nonpartisan civic purposes or for opening a new store, business or profession. In *Metromedia, Inc.,* similar exceptions to the general prohibition against outdoor advertising signs were deemed to create a governmental preference for certain varieties of speech based upon content and to render the San Diego ordinance invalid. The defendant has not brought to our attention any exceptions in the regula-

tions involved here that allow signs containing one kind of information but not another. The remaining case relied on by the defendant in which municipal ordinances were invalidated also involved exceptions, based on content, to a general prohibition against outdoor signs and not merely an exception for on-premises signs relating to activities conducted on the premises. *Matthews* v. *Needham,* 764 F.2d 58, 60 (1st Cir. 1985) ("[n]o political signs are allowed in any district in the Town of Needham; yet such signs as 'For Sale' signs, professional office signs, contractors' advertisements, and signs erected for charitable or religious causes are allowed in all districts").

In *Wheeler* v. *Commissioner of Highways,* 822 F.2d 586 (6th Cir. 1987), cert. denied, 484 U.S. 1007, 108 S. Ct. 702, 98 L. Ed. 2d 653, reh. denied, 485 U.S. 945, 108 S. Ct. 1127, 99 L. Ed. 2d 287 (1988), the court upheld a regulation similar to our § 13a-123-7 (2) that permitted on-premises signs "that contain a message relating to an activity or the sale of a product on the property on which they are located." 603 Ky. Admin. Regs. 3:010, § 2 (3) (1975). The regulation was construed to permit both commercial and noncommercial signs in protected areas so long as the signs relate to activities on the premises. Accordingly, the regulation was deemed to "apply even handedly to commercial and noncommercial speech." *Wheeler* v. *Commissioner of Highways,* supra, 590. The court relied in part upon *Heffron* v. *International Society for Krishna Consciousness, Inc.,* supra, where the United States Supreme Court had upheld a content-neutral prohibition on the sale, exhibition or distribution of materials at a state fair except from fixed locations. "Kentucky, by allowing persons who own or lease property, to have a sign, subject to size and space restrictions, advertising an activity conducted on the property is not favoring one message over another. The state has simply recognized

that the right to advertise an activity conducted on-site is inherent in the ownership or lease of the property." *Wheeler* v. *Commissioner of Highways,* supra, 591; see *Lindmark Associates, Inc.* v. *Willingboro,* 431 U.S. 85, 93, 97 S. Ct. 1614, 52 L. Ed. 2d 155 (1977), quoting *Virginia Pharmacy Board* v. *Virginia Citizens Consumer Council,* 425 U.S. 748, 771, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976) (suggesting that a prohibition against on-premises "For Sale" signs raises "serious questions . . . as to whether the ordinance 'leave[s] open ample alternative channels for communication' "). The Supreme Court of Washington has reached a conclusion similar to that of *Wheeler,* upholding the allowance of on-premises signs advertising activity conducted on the property where the signs are located as an exception to a general prohibition against signs visible from certain highways. *State* v. *Lotze,* supra.

## II

The defendant claims that because he has been enjoined to remove the entire sign structure as well as the Red Writer, Inc. and Vietnam veteran signs at the Bradley Street location, the injunction constitutes a prior restraint upon his use of the structure to display future messages to the public. He relies upon several cases that have invalidated prohibitions on the publication of certain information or material based upon its content. *Nebraska Press Assn.* v. *Stuart,* 427 U.S. 539, 545, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976); *New York Times Co.* v. *United States,* 403 U.S. 713, 714, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971); *Near* v. *Minnesota ex rel. Olson,* 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 (1931). The injunction issued by the trial court is not based upon the content of any message the defendant may wish to put forth, but upon the place he has chosen as a podium. He may disseminate any message, commercial or noncommercial, at some other

place not similarly violative of law. A newspaper publishing company cannot disregard a zoning ordinance and locate its plant in a residential zone on the ground that the restrictions against such a use constitute a prior restraint.

Furthermore, the injunction in this case is no more of a prior restraint than the statute or the regulation that it implements. The regulation, § 13a-123-5 (b), prohibits "sign structures" within 500 feet of an interchange, except for those erected in conjunction with signs relating to on-premises activities. See Regs., Conn. State Agencies § 13a-123-7. In view of our conclusion in part I that the regulation is valid, there is no merit in the defendant's contention that the injunction issued to enforce it is an unconstitutional prior restraint.

## III

The defendant's claim that injunctive relief should have been denied because of the availability of fines under General Statutes §§ 13a-123 (j) and 21-63 as enforcement devices relies upon the equitable doctrine that inadequacy of legal remedies is a prerequisite for an injunction. See *Waterbury Teachers Assn.* v. *Civil Service Commission,* 178 Conn. 573, 577–78, 424 A.2d 271 (1979). In *Conservation Commission* v. *Price,* 193 Conn. 414, 429, 479 A.2d 187 (1984), however, we approved the principle that where a statute expressly provides for equitable remedies in addition to the ordinary legal ones, it may be presumed that there is no adequate legal remedy, because the legislature would not have provided the additional remedies if they were not needed. General Statutes § 13a-123 (i)[6] provides

---

[6] General Statutes § 13a-123 (i) provides:"The commissioner may order the removal of any advertising structure, sign, display or device along any interstate, federal-aid primary, or other limited access state highway erected in violation of this section. Any advertising structure, sign, display or device

that "[t]he commissioner may order the removal of any advertising structure, sign, display or device" erected in violation of § 13a-123 and also authorizes him to remove them at the owner's expense for failure to comply with the removal order.

"It is the court's duty to carry out the intention of the legislature as expressed in the statute it has enacted and to make the remedy it has provided an effective and efficient means of dealing with violations of the act and regulations properly promulgated under its authority." *Conservation Commission* v. *Price, supra,* 430. This does not mean that a court is "mechanically obligated to grant an injunction for every violation of law." *Weinberger* v. *Romero-Barcelo,* 456 U.S. 305, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982). A judge retains a reasonable discretion to decide whether injunctive relief is appropriate even though it is authorized by statute.

Our review of the terms of the injunction issued in this case and the memorandum of decision satisfies us

in existence on September 1, 1965, within six hundred and sixty feet of the right-of-way of any interstate, federal-aid primary, or other limited access state highway may continue to be maintained until July 1, 1970, but may not be replaced or relocated on such highway except in areas where otherwise allowed by statute or regulations adopted thereunder. Any advertising structure, sign, display or device lawfully erected since September 1, 1965, within six hundred sixty feet of the right-of-way of any interstate, federal-aid primary, or other limited access state highway and before June 21, 1967, may continue to be maintained until the end of the fifth year after it becomes nonconforming, but may not be replaced or relocated on such highway except in areas where otherwise allowed by statutes or regulations adopted thereunder. If the person, firm or corporation in control of or owning a structure, sign, display or device or whose name appears thereon does not remove it within fourteen days after an order of removal has been sent to such person, firm or corporation by registered or certified mail, said commissioner may cause such structure, sign, display or device to be removed and the expense of such removal may be collected from the person, firm or corporation owning or controlling the same in an action based on the provisions of this section, or from the sureties on the bond filed by a nonresident person, firm or corporation pursuant to section 21-54."

that the trial court properly exercised its discretion in ordering removal of the Bradley Street sign structure by the defendant. There was no evidence that the structure was likely to be used in the future for any legal purpose, such as advertising some on-premises activity. In the analogous situation of zoning regulation enforcement, the availability of fines as an alternative remedy has been held not to preclude the issuance of an injunction. *Johnson* v. *Murzyn,* 1 Conn. App. 176, 179–81, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). The injunction merely implements the order that the statute authorized the commissioner to issue.

## IV

It is unnecessary to consider the defendant's claim for an injunction and damages against the commissioner for violation of his constitutional rights, because we have already concluded that no such violation has occurred. It should be noted, however, that any claim for monetary relief would have to be submitted to the claims commissioner pursuant to General Statutes § 4-147.

There is no error.

In this opinion the other justices concurred.