[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court on defendant's motion for summary judgment.
The majority of the officers and directors of the Groton Long Point Association, Inc., recommended the adoption of an ordinance permitting the use of shotguns to kill a select number of deer in Groton Long Point. The plaintiff, Donna Kroll, a resident of Groton Long Point, placed a 20 square foot mural in her yard depicting two deer in a marsh setting with the caption, "Who Asked The Deer?." The defendant, Groton Long Point Zoning Officer, Kenneth Steere, ordered the plaintiff to "cease and desist" from displaying the mural on the grounds that the mural was in violation of ordinance 3.20 of the Groton Long Point Zoning Regulations. Ordinance 3.20 provides, in part, that "[o]nly one sign of not over one (1) square foot in area may be displayed on any building in any district, except as provided in Sections 4.1.6 and 5.3.1 [of the regulations]. . . ." Neither 4.1.6 and 5.3.1 apply in the case at hand.
The plaintiff filed a complaint on January 6, 1998, alleging CT Page 15268 that the defendant's "cease and desist order" violated her rights under the First Amendment to the United States Constitution. The plaintiff further alleges that at the time she displayed the mural there were several readily visible violations of ordinance 3.20 by other homeowners in Groton Long Point yet the defendant did not enforce the ordinance against them. The plaintiff argues that selective enforcement of ordinance 3.20 constitutes a violation of 42 U.S.C. § 1983. The defendant filed a motion for summary judgment on September 11, 1998 and a memorandum in support of his motion. The plaintiff filed an objection to the defendant's motion and a supporting memorandum of law.
"Practice Book § 384 [now Practice Book (1998 Rev.) § 17-49], provides that summary judgment shall be rendered, forthwith, if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Haesche v. Kissner,229 Conn. 213, 217, 640 A.2d 89 (1994).
Connecticut's Zoning Enabling Act, General Statutes § 8-2(a), bestows upon a local zoning commission the authority to promulgate regulations with regard to, inter alia, "the height, size and location of advertising signs and billboards," and our Supreme court held this to be a proper exercise of the police power in Murphy, Inc. v. Town ofWestport, 131 Conn. 292, 299, 40 A.2d 177 (1944). The word "advertise" and thus, what permissibly may be regulated as an "advertising sign" was defined in Schwartz v. Planning and ZoningCommission, 208 Conn. 146, 543 A.2d 1339 (1988), as follows: "to announce publicly esp[ecially] by a printed notice or a broadcast; [and] to call public attention to esp[ecially] by emphasizing desirable qualities so as to arouse a desire to buy or patronize." Id., 155.
No argument has been raised by either the plaintiff or defendant regarding the applicability of the term "advertise" in the present case. The plaintiff, however, argues that the mural is not a "sign" which is subject to the provisions governing signs under section 3.20 of the Groton Long Point Zoning Regulations as authorized by the Zoning Enabling Act.
"[Z]oning regulations and ordinances, being in derogation of common law, must be strictly construed and not extended by implication. . . . These regulations must be interpreted in CT Page 15269 accordance with the ordinary rule of statutory construction that, where the language of the statute is clear and unambiguous, courts cannot by construction read into the statutes provisions which are not clearly stated. . . . In addition, words employed in zoning ordinances are to be interpreted in accord with their natural and usual meaning." (Citations omitted.) Schwartz v.Planning Zoning Commission, supra, 208 Conn. 153.
The word "sign" is not defined within the Groton Long Point Zoning Regulations. Therefore, the court is guided by the word's common, natural and ordinary meaning as expressed by the word's dictionary definition. The most relevant definition of "sign" inWebster's New World College Dictionary (3d. Ed.) is as follows: "[a] publicly displayed board, placard, etc. bearing information, advertising, a warning, etc." In comparison, "mural" is defined as: "a picture, esp. a large one, painted directly on a wall or ceiling, or a large photograph, etc, attached directly to a wall."
The former definition is more in keeping with the physical characteristics of the object at issue. The plaintiff's pictorial of two deer was not painted directly onto a wall or ceiling but on a free-moving placard. Further, the placard contained a printed portion which was intended to inform the plaintiff's community of her opposition to the deer hunt regulation. Therefore, the plaintiff's mural qualifies as a "sign" and will, hereinafter, be referred to as such. Accordingly, the sign is subject to the regulations of ordinance 3.20.
The plaintiff argues further that the defendant's cease and desist order violated her right to free speech and expression under the first amendment to the United States Constitution. In opposition, the defendant argues that enforcement of the ordinance was permissible as a reasonable "time, place, and manner" restriction.
"While signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers." City of Ladue v. Gilleo,512 U.S. 43, 48, 114 S.Ct. 677, 126 L.Ed.2d 645 (1994). "[Signs] . . . like other media of communication, combine communicative and noncommunicative aspects. As with other media, the government has legitimate interests in controlling the non-communicative aspects of the medium . . . but the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative CT Page 15270 aspects. Because regulation of the noncommunicative aspects of a medium often impinges to some degree on the communicative aspects, it has been necessary for the courts to reconcile the government's regulatory interests with the individual's right to expression." Metromedia, Inc. v. San Diego, 453 U.S. 490, 502,101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).
The government has a significant interest in the regulation of signs in order to maintain the safety of vehicular traffic. "Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs. . . ." City of Ladue v. Gilleo, supra,512 U.S. 48.
This interest, however, must be weighed against an individual's right to free speech and expression. Signs serve as a unique medium through which an individual may exercise these rights. "Signs that react to a local happening or express a view on a controversial issue both reflect and animate changes on the life of a community. Often placed on lawns or in windows, residential signs play an important part in political campaigns, during which they are displayed to signal the resident's support for particular candidates, parties or causes. They may not afford the same opportunities for conveying complex ideas as do other media, but residential signs have long been an important and distinct medium of expression." City of Ladue v. Gilleo, supra,512 U.S. 55.
The First Amendment, however, does not guarantee the right to communicate one's view at all times and places or in any manner that may be desired. Heffron v. International Society for KrishnaConsciousness, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298
(1981). "Reasonable time, place and manner regulations affecting speech that further significant government interests and are not overbroad have long been upheld as valid. . . ." Burns v.Barrett, 212 Conn. 176, 186, 561 A.2d 1378 (1989). "A major criterion for a valid time, place, and manner restriction is that the restriction may not be based upon either the content or subject matter of speech." Id., 187.
The ordinance at issue does not ban the display of all signs as an unacceptable manner of communication. Nor does the ordinance distinguish between permissible and impermissible signs CT Page 15271 by reference to their content. Rather, the ordinance simply restricts the size of signs which may be displayed. Therefore, the ordinance does not foreclose upon this important medium of communication, but merely restricts the manner in which this communication may be carried out. The restriction placed on the plaintiff's mode of communication is reasonable in light of the interest the municipality has in maintaining the safety of its streets.
The plaintiff next alleges that the defendant deprived the plaintiff of equal protection of the laws through selective enforcement of ordinance 3.20 in violation of 42 U.S.C. § 1983.
"To state a cause of action under § 1983, a plaintiff must allege that a deprivation of federal rights has occurred under color of any statute, ordinance, regulation, custom or usage. 42 U.S.C. § 1983." Tedesco v. Stamford, 215 Conn. 450,456, 576 A.2d 1273 (1990). Liability in an equal protection case based on selective enforcement "should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."Schnabel v. Tyler, 230 Conn. 735, 762, 646 A.2d 152 (1994).
The plaintiff has failed to sufficiently allege that she has been selectively treated as compared with others similarly situated. In her complaint, the plaintiff alleges that, "[t]he Defendant never took any action against any of the homeowners in Groton Long Point for the myriad of violations on people's homes in Groton Long Point as well as real estate for sale signs that violated 3.20." Amended Complaint, ¶ 14. This part of the complaint fails to plead facts which will provide the court with the identification of others similarly situated with which to compare the plaintiff's treatment and does not provide allegations as to the exact nature of the violations. See Biancov. Darien, 157 Conn. 548, 254 A.2d 898 (1969) (plaintiff's assertion of a lack of enforcement against property owners who were in violation of zoning regulations was insufficient to demonstrate a "pattern of discrimination" because plaintiff did not show nature of violations).[1]
The plaintiff does, however, identify in her complaint, John Sebastian, a neighbor who was permitted to display three signs on CT Page 15272 his property which supported political candidates, all of which were in excess of one square foot. But the "[m]ere laxity in the administration of the law, no matter how long continued, is not and cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity." Bianco v. Darien,supra, 157 Conn. 559-60. "[F]or the plaintiff to prevail, [she] must show a pattern of discrimination consciously practiced." Id. The plaintiff's allegations fail to set out any pattern or practice of discrimination on the part of the defendant.
The present case presents no genuine issue of material fact. Accordingly, the defendant's motion for summary judgment is granted.
Mihalakos, J.