[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Hill/City Point Neighborhood Action Group, is an unincorporated association comprised of residents, as well as architectural historians, preservationists, and concerned New Haven citizens. The plaintiff seeks an temporary injunction to restrain the defendants, city of New Haven and city of New Haven Board of Education, CT Page 8894 from demolishing certain buildings located on Kimberly and St. Peter's Street in New Haven, Connecticut. The buildings include 174 Kimberly Avenue (St. Peter's Parish Hall), 164 Kimberly Avenue (St. Peter's Rectory), 154 Kimberly Avenue (St. Peter's Church), 10 St. Peter's Street (St. Peter's Convent), and 12 St. Peter's Street (St. Peter's School) (hereinafter, collectively, the "property").
The plaintiff alleges that the property is under consideration for listing in the National Register in that the property has been approved for a study for a listing on the National Register. The plaintiff further contends that the property has been listed on the State Register of Historic Places in recognition of the complex's architectural and historic merit. The plaintiff argues that the defendants' plan to demolish the property is unreasonable and would destroy the public trust in a historic structure. The plaintiff further alleges that the defendants, as a certified local government ("CLG"), have failed to adequately involve the public in the decision process and to seek adaptive reuses of the property.
The defendant city of New Haven is the record owner of the buildings and the property on which the buildings are located. The defendants have planned the demolition of the buildings in order to construct an Arts Magnet School, a proposed 500 student public middle school. The defendants argue that there are no other feasible and prudent alternatives to the demolition.
On April 18, 2000, the plaintiff filed an ex parte application for an immediate temporary injunction to prevent the defendants from demolishing the buildings. The plaintiff also filed a complaint, dated April 18, 2000, seeking injunctive relief. Judge Pittman signed the plaintiff's order for temporary injunction on April 18, 2000, subject to a hearing set for April 25, 2000. The matter was then continued until May 3, 2000 to allow the plaintiff to inspect the buildings. On April 25, 2000, the defendants filed a motion to dismiss the case, arguing that the plaintiff lacked standing because the buildings at issue did not fall under the protection afforded by General Statutes § 22a-19a. The defendants' motion to dismiss was denied on May 4, 2000 (See Memorandum of Decision dated May 18, 2000). On May 3, 2000, the plaintiff filed an additional memorandum of law in support of its application for an ex parte order for immediate temporary injunction. A hearing regarding the temporary injunction commenced on May 4, 2000 and continued on May 5, 8, 9, 12, 15 and 16, 2000. On May 8, 2000, the parties filed a stipulation of facts (pleading #102).
 APPLICABLE LAW
CT Page 8895
"In general, a court may, in its discretion, exercise its equitable power to order a temporary injunction pending final determination of the order, upon a proper showing by the movant that if the injunction is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law." Moore v. Ganim, 233 Conn. 557, 569 n. 25,660 A.2d 742 (1995). If, however, a statute or regulation has been violated, and that statute authorizes injunctive relief, the applicant need not prove irreparable harm. Burns v. Barnett, 41 Conn. Sup. 66
(1988), aff'd, 212 Conn. 176, 561 A.2d 1378, cert. denied, 493 U.S. 1003,110 S.Ct. 563 (1989). "The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier. "(Internal quotation marks omitted.) Tomasso Bros., Inc. v. OctoberTwenty-four, Inc., 230 Conn. 641, 648, 646 A.2d 133 (1994). "In exercising its discretion, the court in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Internal quotation marks omitted.) Moorev. Ganim, supra, 233 Conn. 569 n. 25.
Here, the plaintiff seeks an injunction, pursuant to § 22a-19a[1], to enjoin the defendants from demolishing certain buildings the plaintiff claims are historic in nature. To prevail, the plaintiff must demonstrate that it is reasonably probable that it will succeed in its suit in chief and in doing so, must also satisfy this court that the equities are balanced in its favor. The plaintiff must thus establish a prima facie case under § 22a-19a. First, the plaintiff must show that the buildings at issue are "(a) listed or under consideration for listing as individual units of the National Register of Historic Places (16 U.S.C. § 470a, as amended) or (b) which are a part of a district listed or under consideration for listing on said national register and which have been determined by the State Historic Preservation Board to contribute to the historic significance of such district." General Statutes § 22a-19a. Second, the plaintiff must show that the defendants' "conduct. . . acting alone or in combination with others, has or is likely unreasonably to destroy the public trust in such historic structures or landmarks..." General Statutes § 22a-19a.
"Once a prima facie case is shown, the burden of production shifts to the defendant." Manchester Environmental Coalition v. Stockton,184 Conn. 51, 60, 441 A.2d 68 (1981). "Under 22a-17, the defendant may rebut the prima facie showing by the submission of evidence to the contrary." (Internal quotation marks omitted.) Id. "[T]he nature of the evidence necessary to rebut plaintiffs showing will vary with the type of environmental pollution, impairment or destruction alleged and with the nature and amount of the evidence proffered by the plaintiff. In some cases, no doubt, testimony by expert witnesses may be sufficient to rebut the plaintiffs prima facie showing." (Internal quotation marks omitted.) CT Page 8896 Id.
"The defendant may also prove, by way of an affirmative defense, that, considering all relevant surrounding circumstances and factors, there is no feasible and prudent alternative to the defendant's conduct and that such conduct is consistent with the reasonable requirements of the public health, safety and welfare." General Statutes, § 22a-17. "Prudent alternatives are those which are economically reasonable in light of the social benefits derived from the activity." Manchester EnvironmentalCoalition v. Stockton, supra, 184 Conn. 63. "Costs may be considered in deciding what is 'prudent.' A mere showing of expense, however, will not mean that an alternative is imprudent." Manchester EnvironmentalCommission v. Stockton, supra, 184 Conn. 63. "'Feasible' alternatives are those which do not present unique problems." Connecticut HistoricalCommission v. 250 Waldmere Avenue Association, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 232984, (March 6, 1997, Jacobson, J.), citing Manchester Environmental Commission v. Stockton, supra, 184 Conn. 51. See also Citizens to Preserve Overton Park, Inc. v.Volpe, 401 U.S. 402, 411, 91 S.Ct. 814 (1971).
 FINDINGS AND CONCLUSIONS OF LAW
The plaintiffs request for injunctive relief is denied as the defendants have successfully established an affirmative defense to the plaintiffs prima facie case under § 22a-19a. This court, considering all the relevant circumstances and factors at issue, finds that the demolition is not unreasonable and that the equities are balanced in favor of the defendant.
A. The plaintiff's prima facie case under § 22a-19a.
1. The plaintiff has shown that the property is under considerationfor listing as units of the National Register of Historic Places(16 U.S.C. § 470a, as amended).
Earlier in the proceedings, this court recognized that the buildings at issue "were under consideration by the National Register" as required under § 22a-19a and therefore, this court denied the defendants' motion to dismiss. The plaintiff had sufficiently met its burden in showing that the buildings were under consideration even though the application was still pending for listing on the National Register. This court stated that the plaintiff "has standing to bring an action for injunctive relief where the state preservation officer has approved the study for listing on the National Register and the plaintiff has submitted forms for listing on the National Register. The statutory language "under consideration for listing' on the National Register is CT Page 8897 broad enough to embrace an "under consideration for study' period as an integral prelude to the "under consideration for nomination period."'Hill/City Point Neighborhood Action Group v. City of New Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 437784 (May 18, 2000, Meadow, J.). See also Manchester Environmental Coalitionv. Stockton, supra, 184 Conn. 57 (the Environmental Protection Act, General Statutes §§ 22a-14 through 22a-20, is remedial in nature and should be liberally construed to accomplish its purpose). "The two steps of study and nomination are within the same process of "under consideration for listing."' Hill/City Point Neighborhood Action Group v.City of New Haven, supra, Superior Court, Docket No. 437784. This court concludes, therefore, that the plaintiff has shown that the property is under consideration for listing as units of the National Register of Historic Places (16 U.S.C. § 470a, as amended).
2. The plaintiff has shown that the defendants' conduct is likely unreasonably to destroy the public trust in a historic structure orlandmark.
It is uncontraverted that the defendants plan to demolish the property for the construction of an Arts Magnet Middle School. The plaintiff, having established that the property at issue is "under consideration" for listing on the National Register, can show that the defendants' intended conduct to demolish the property would destroy the public trust in a historic structure or landmark. This court concludes, therefore, that the plaintiff has established its prima facie case under §22a-19a.
It was conceded at trial that a property is listed on the National Register of Historic Places is not a shield to estop an owner from demolition.
The defendants have established an affirmative defense to the plaintiffs suit by showing this court that there are no feasible and prudent alternatives to the demolition. As such, the plaintiff does not prevail.
B. The defendants' affirmative defense.
1. The defendants have established that considering all the relevant surrounding circumstances and factors, there are no feasible and prudentalternatives to the demolition.
The defendants claim that there are no feasible alternatives to the demolition of the property in that preservation and/or renovation present unique financial and practical problems. As such, the defendants plead CT Page 8898 that the demolition of the property is consistent with the reasonable requirements of the public health, safety and welfare. General Statutes § 22a-17.
The plaintiff has not offered proof sufficient to satisfy this court that a feasible alternative to the demolition is in place. The plaintiff offered testimony that was speculative and tenuous. For example, the plaintiffs witness Miss Nelson suggested that, if given the opportunity to conduct a three to four month feasibility study, another use for the church may be found. Miss Nelson was not knowledgeable as to the structural conditions of the church and was unable to estimate the cost of any potential reuse of the church. Similarly, the plaintiffs witness Mrs. Fellows offered testimony as to a hypothetical use for the property. Fellows suggested that the property may be well-suited for an Episcopalian school. Fellows admitted that the idea was purely preliminary at this point. Fellows further testified that funding was not immediately available, but a fund drive could possibly raise several million dollars. This court finds that such testimony is indefinite and too hypothetical to be given any great weight.
The plaintiff also offered the rebuttal testimony of Mr. Edwards, an architect. This court finds Edwards' testimony credible. Edwards testified that the $500,000 cost to complete the repairs of the church that was identified in a report prepared in November, 1991 by Professor Baerman and put into evidence by the plaintiff would probably cost approximately $1,000,000 today, due to inflation. (See Ex.9.) Edwards agreed with Professor Baerman's opinion that the church is in very bad condition. (See Ex.9.) Edwards also indicated that three to four months would be necessary to do a feasibility study of the potential reuse of the church.
The defendants offered the testimony of Mr. Ferro, an architect, art historian and trained structural engineer. This court finds his testimony reliable and credible. Ferro testified that the church building was structurally damaged on all sides and that any reuse would require conformity to current building codes, including seismic requirements. Based on his opinion, the church would have to be taken down and rebuilt from the foundation up. The cost for rebuilding would be $1,500,000 to cover the needed structural repair and an additional $1,500,000 to convert the building for some alternative use. Ferro "also disagreed that the four buildings slated for demolition had any architectural, artistic, or historical significance sufficient to justify and/or warrant preservation. Ferro further testified that the proposed design of the new school was excellent and met the needs of the program to be conducted at the site. CT Page 8899
Mrs. Weisselberg, another witness for the defendants, testified that public funding would not provide more funds to renovate old buildings in excess of the funds needed for new construction. Weisselberg testified, that a delay in the city's project to demolish this property would delay other projects as well.
The defendants have offered evidence showing that a tremendous additional expense would be incurred should the city be required to renovate/rebuild the property. The property is in need of major repair and maintenance. Any reuse of the property at this time would require conformity with current building codes. Testimony revealed serious deterioration of the building, including structural walls in need of repair. This court finds that the evidence presented by the defendants as to the cost of restoration weigh heavily against restoration as a "prudent" alternative. This court concludes, therefore, that the additional expense, the considerable delay the city would suffer, and the impact on the educational program would make a renovation or potential reuse of the property less than prudent (See Transcript of Oral Decision by Court May 23, 2000).
 CONCLUSION
This court concludes from all the evidence at trial and the arguments presented, as well as consideration of all the relevant circumstances and factors, that the demolition of the church, the convent, the school and the rectory is not unreasonable. The probability of success by the plaintiff on the merits of this case is unlikely given that the defendants have established an affirmative defense. The plaintiff clearly has not demonstrated to this court that it will be successful in stopping the demolition on a final hearing for a permanent injunction. The defendants affirmatively proved that considering all the relevant surrounding circumstances and factors, there are no feasible and prudent alternatives to the defendants' plans to demolish the property. The demolition is consistent with the reasonable requirements of the public health, safety and welfare under § 22a-17. The proposed Art Magnet Middle School is for the public good and far outweighs consideration not to demolish the property. Balancing the equities and the unlikely success by the plaintiff at a final hearing, this court denies the plaintiffs request for a temporary injunction.
 _______________________ Frank S. Meadow, J.T.R.