McDONALD, J.
**531 *410 "The outdoor sign or symbol is a venerable medium for expressing political, social and commercial ideas." (Internal quotation marks omitted.)
**532 Metromedia, Inc. v. San Diego , 453 U.S. 490, 501, 101 S.Ct. 2882, 69 L.Ed. 2d 800 (1981). The primary issue we must resolve in this case is whether General Statutes § 8-2,[1] which authorizes a municipality's zoning commission to regulate the height, size, and location of "advertising signs and billboards," permits a municipality to regulate signs erected on residential property that disparage a commercial vendor.
The plaintiff, the zoning enforcement officer for the city of Milford,[2] appeals from the judgment of the trial court denying the plaintiff's request for permanent injunctions ordering the defendant homeowner, Eileen R. Arisian, to remove signs on her property that were not in compliance with city zoning regulations and precluding the defendant from occupying the property until she obtained certain certificates required after home improvements had been made to her residence.[3] We conclude that the defendant's signs are not "advertising signs," and, accordingly, the trial court properly concluded that municipal regulation of such signs is outside the scope of the authority granted under § 8-2. We further conclude that the trial court properly exercised its discretion when it declined to issue an injunction precluding the defendant from occupying the subject premises.
I
We first address the plaintiff's challenge to the trial court's conclusion that the city's zoning commission **533 lacked authority to regulate the defendant's signs as "advertising signs" under § 8-2. The following undisputed facts and procedural history are relevant to this issue.
The defendant contracted with Baybrook Remodelers, Inc., for certain home improvements. Evidently dissatisfied with Baybrook's performance, the defendant erected three signs on her property. One sign stated: "I Do Not Recommend BAYBROOK REMODELERS." Two signs contained the caption: "BAYBROOK REMODELERS' TOTAL LAWSUITS," with bar graphs underneath the caption reflecting the number of lawsuits to which the contractor purportedly was a party.
Thereafter, the plaintiff issued an order notifying the defendant that her signs violated city zoning regulations limiting the size, height, and number of signs per *411 street line and ordering her to remove them.[4] See Milford Zoning Regs., art. V, §§ 5.3.3.3 (2) and 5.3.4.1. When the defendant still had not complied months later, the plaintiff commenced the present action, which sought to enjoin the defendant from maintaining the signs that did not comply with the zoning regulations. The defendant asserted a special defense that the city lacked authority to regulate her signs under § 8-2.
The trial court denied the request for the injunction. The court found that the defendant's signs violated the restrictions on the size, height, and number of signs in the city's zoning regulations. The court nonetheless concluded that the city lacked authority to regulate the signs under § 8-2. It reasoned that the defendant's signs were not "advertising signs"
**534 as previously defined by this court because they did not promote the sale of goods or services. This appeal followed.
On appeal, the plaintiff asserts that an "advertising" sign, as that term is used in § 8-2 and as that term is commonly defined, means any sign that makes a public announcement. According to the plaintiff, this broad definition is proper because it more fully aligns with the stated purposes of the zoning enabling statute than the narrower one adopted by the trial court. The plaintiff further asserts that this broader definition is proper because a narrower definition may constitute content based regulation in violation of the first amendment to the United States constitution. We disagree.[5]
The meaning of the term "advertising signs" is a matter of statutory construction, to which well settled principles and plenary review apply. Middlebury v. Connecticut Siting Council , 326 Conn. 40, 48, 161 A.3d 537 (2017). "In seeking to determine that meaning, General Statutes § 1-2z directs us to first consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of a statute shall not be considered.... When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation **535 and common law principles governing the same general subject matter ...." (Internal quotation marks omitted.) Gilmore v. Pawn King, Inc. , 313 Conn. 535, 542-43, 98 A.3d 808 (2014).
In addition to these general principles, we must be mindful when construing § 8-2 that the grant of municipal authority to enact zoning regulations is in derogation of the common law. See City Council v. Hall , 180 Conn. 243, 248, 429 A.2d 481 (1980) ("as a creation of the state, a municipality *412 has no inherent power of its own... [and] the only powers a municipal corporation has are those which are expressly granted to it by the state" [citations omitted] ); see also Schwartz v. Planning & Zoning Commission , 208 Conn. 146, 153, 543 A.2d 1339 (1988) (zoning regulations and ordinances are in derogation of common law). As such, this grant of authority "should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction." (Internal quotation marks omitted.) Ugrin v. Cheshire , 307 Conn. 364, 380, 54 A.3d 532 (2012).
We begin our analysis with the observation that there is no definition of "advertising signs" or "advertise" anywhere in the General Statutes that provides guidance in the present case. But see General Statutes § 20-206g (a) (defining " 'advertise' " for purposes of provision limiting advertisements by massage therapists by reference to inclusion of certain terms). However, as the trial court's decision in the present case reflects, this court has previously considered the meaning of this term.
In Schwartz v. Planning & Zoning Commission , supra, 208 Conn. at 153-54, 543 A.2d 1339, the defendant commission was attempting to apply its zoning regulations to preclude the display of an artistic, cylindrical metal sculpture erected in front of a shopping plaza. We concluded **536 that the sculpture was not a "sign" as defined under the town of Hamden's zoning regulations, because, although it would attract the attention of passersby, it did not attract attention to a " 'use, product, service, or activity' " as provided under the regulation's definition. Id., at 154, 543 A.2d 1339. We also noted, however, that the defendant commission's expansive interpretation was not consistent with the authority granted to it under § 8-2 to regulate "advertising signs and billboards." Id., at 154-55, 543 A.2d 1339. The court first referenced dictionary definitions of "advertise" that it deemed most relevant: "to announce publicly esp[ecially] by a printed notice or a broadcast; [and] to call public attention to esp[ecially] by emphasizing desirable qualities so as to arouse a desire to buy or patronize ." (Emphasis added; internal quotation marks omitted.) Id., at 155, 543 A.2d 1339. The court then noted the lack of evidence to establish that the presence of the sculpture would "arouse the desire of passersby to patronize the merchants and services available there." Id.
Putting aside the question of whether this discussion of § 8-2 is dictum, as the plaintiff contends, we are not persuaded that the definition applied in Schwartz is dispositive of the issue in the present case because the court failed to engage in a comprehensive statutory analysis and overlooked governing rules of construction.[6] Accordingly, we now undertake the requisite analysis. See State v. Patel , 327 Conn. 932, 939, 171 A.3d 1037 (2017) (The court acknowledged prior case law addressing the matter before the court but concluded: "[W]e have never undertaken the necessary textual and historical examination to reach an informed conclusion.... Therefore, we now undertake such an examination, **537 informed by settled factors that guide this process." [Citations omitted; footnote omitted.] ). *413 In the absence of a statutory definition of "advertising signs," our starting point must be the common meaning of the term, as reflected in the dictionary. See General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"); Maturo v. State Employees Retirement Commission , 326 Conn. 160, 176, 162 A.3d 706 (2017) (relying on dictionary definitions). However, the definition applied in Schwartz, as well as those relied on by both parties to the present case, suffers from two flaws. First, those definitions are not contemporaneous with the time when the grant of authority to regulate "advertising signs and billboards" was added to the zoning enabling statute. See Maturo v. State Employees Retirement Commission , supra, at 176, 162 A.3d 706 ("[w]hen a term is not defined in a statute, we begin with the assumption that the legislature intended the word to carry its ordinary meaning, as evidenced in dictionaries in print at the time the statute was enacted"); see also Sandifer v. U.S. Steel Corp. , 571 U.S. 220, 134 S.Ct. 870, 876, 187 L.Ed. 2d 729 (2014) ("[i]t is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary , common meaning" [emphasis added; internal quotation marks omitted] ); see, e.g., id. (looking to dictionary definition at time of statute's enactment). Second, the parties rely exclusively on definitions of the verb "advertise," not the adjective "advertising," which is the operative form of the word used in the statute and which could have a different meaning.
The grant of municipal zoning authority to regulate "advertising signs and billboards" was added to the zoning enabling statute in 1931. Public Acts 1931, c. 29, § 42a; General Statutes (Cum. Supp. 1931) § 88c.
**538 Contemporaneous dictionaries provide a relevant definition of "advertise" that is consistent with the broad meaning advocated by the plaintiff. See Webster's New International Dictionary (2d Ed. 1934) p. 39 ("[t]o give notice to; to inform; to notify; to make known to; hence, to warn;-often with of before the subject of information; as, to advertise a man of his loss" and "[t]o give public notice of; to announce publicly, esp[ecially] by a printed notice; as, to advertise a sale; hence, to call public attention to, esp[ecially] by emphasizing desirable qualities, in order to arouse a desire to purchase, invest, patronize, or the like" [emphasis in original] ); Funk & Wagnalls New Standard Dictionary of the English Language (1928) p. 42 ("[t]o give public notice or information, as of some thing desired, an entertainment, a place of business, etc.; publish; as, to advertise for a servant; to advertise extensively" [emphasis in original] ). These definitions indicate that commercial advertising is perhaps the most common form of such expression, but not the only form under this broad meaning.[7]
*414 The definition of "advertising," however, reflects a more specific meaning aimed at the purpose of this form of expression. Webster's New International Dictionary, **539 supra, p. 39, defines "advertising" as "[a]ny form of public announcement intended to aid directly or indirectly in the sale of a commodity, etc., in the promulgation of a doctrine or idea, in securing attendance, as at a meeting, or the like." See also Funk & Wagnalls New Standard Dictionary of the English Language (1946) p. 42 (defining "advertising" as "[t]he act of making known by public notice; by extension, the art of announcing or offering for sale in such a manner as to induce purchase"). These dictionaries reflect that, around 1931, "advertising" referred to the promotion of many subjects, of which commercial goods and services were perhaps the most common. Because the announcement is "intended to aid" the proponent, the definition implies that some benefit inures to the proponent through such promotion.[8] See, e.g., People v. Hopkins , 147 Misc. 12, 13-15, 263 N.Y.S. 290 (Spec. Sess. App. Pt. 1933) (The court concluded that a municipal ordinance prohibiting "advertising" trucks in the streets had been violated by a truck bearing messages offering a reward for the arrest of persons who had bombed a labor union's headquarters, and the following statements: "Please do not patronize Patio Albermarle Farragut Rialto. They employ a scab group." "We stand for decency in unionism ....").
When the meaning of "advertising" is linked with the meaning of "sign," there is further evidence that the **540 broadest meaning of "advertise"-any public announcement-was not intended when this zoning authority was granted in 1931. The relevant contemporaneous definition of "sign" was "[a] lettered board, or other conspicuous notice, placed on or before a building, room, shop, or office to advertise the business there transacted, or the name of the person or firm conducting it; a publicly displayed token or notice." Webster's New International Dictionary, supra, p. 2334. As such, the definition distinguishes a sign as a means to advertise from a means to simply convey information to the public.[9] *415 By interpreting "advertising" consistently with its contemporaneous definition, we afford independent meaning to that term as well as to "sign." By contrast, the plaintiff's interpretation of advertising sign to mean any sign that makes a public announcement largely renders the term "advertising" superfluous.[10] It is a cardinal rule of construction that no word or phrase of a statute should be rendered superfluous. See, e.g., **541 Marchesi v. Board of Selectmen , 309 Conn. 608, 615, 72 A.3d 394 (2013) ; Lopa v. Brinker International, Inc. , 296 Conn. 426, 433, 994 A.2d 1265 (2010). Had the legislature intended to cast such a broad net, presumably it would have simply granted a municipality the authority to regulate "signs," as it has in other provisions of the General Statutes. See, e.g., General Statutes § 7-148 (c) (7) (vi) (granting municipality power to "[r]egulate and prohibit the placing, erecting or keeping of signs ... upon or over the sidewalks, streets and other public places of the municipality").
We also observe that the contemporaneous, narrower meaning of advertising better comports with related statutes and the history of the grant of regulatory authority. "Advertising signs" are the subject of several other statutes, some adopted prior to the amendment to the zoning statute in 1931, and some afterward. Prior to 1931, the legislature enacted a licensing (permit and fee) requirement for advertising signs, which was codified in a chapter of the General Statutes entitled "ADVERTISING SIGNS." Public Acts 1915, c. 314; General Statutes (1918 Rev.) tit. 25, c. 168. That scheme is currently codified at chapter 411 and is identically entitled. See General Statutes §§ 21-50 through 21-63. According to historical evidence, this requirement was aimed at controlling the proliferation of commercial advertising.[11]
*416 See J. Loshin, "Property in the Horizon:
**542 The Theory and Practice of Sign and Billboard Regulation," 30 Environs: Envtl. L. & Policy J. 101, 125-26 (2006) (case study of New Haven's treatment of signs and billboards); see also General Statutes (Cum. Supp. 1931) §§ 89c and 90c (prescribing conditions for erecting advertising signs and treating such signs as type of commercial or business structure).[12] However, exemptions to the licensing requirement reveal that the signs subject to the licensing requirements extended beyond purely commercial advertising to signs promoting other types of enterprises. See General Statutes § 21-55 (providing exemption for "advertising sign containing six square feet or less, from any town, city, borough, fire district or incorporated fire company, service club or church or ecclesiastical society in this state for any advertisement owned by it and advertising its industries **543 or attractions and maintained at either public or private expense"); see also General Statutes (1918 Rev.) § 3024 (excluding signs less than four square feet); General Statutes (1918 Rev.) § 3029 (providing exception for "any town, city or borough for any advertisement owned by it and advertising its industries and maintained at either public or private expense"). Consistent with the contemporaneous meaning of "advertising," this exemption implies that advertising promotes something for the benefit of the proponent.
This meaning is also consistent with the interpretation given to a statute regulating advertising signs that was subsequently enacted. The legislature enacted a statute limiting placement of advertising signs and structures within a certain distance of highways. See General Statutes § 13a-123. This statute was originally enacted in 1959 and subsequently was amended in 1967 to ensure compliance with the federal Highway Beautification Act of 1965. See Public Acts 1959, No. 526, §§ 1-7, 9-11; Public Acts 1967, No. 632, § 1. Notably, the statute exempts signs bearing certain subject matter; all of the specific examples cited conform to the promotional, beneficial definition of advertising previously cited, i.e., signs "pertaining to natural wonders and scenic and historical attractions," "advertising the sale or lease of the property," or advertising "activities conducted on the property on which they are located ...." General Statutes § 13a-123 (e) (1), (2) and (3). In Burns v. Barrett , 212 Conn. 176, 189, 561 A.2d 1378, cert. denied, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed. 2d 558 (1989), this court considered the application of a regulation promulgated under § 13a-123, which elaborated on the exemption for signs advertising activities conducted on the premises where the sign is located. In rejecting a claim that the regulation applied to commercial speech only, the court addressed noncommercial advertising in a manner consistent with the promotional, beneficial **544 definition set forth *417 in the 1934 Webster's New International Dictionary: "We construe the regulation ... to include ... those [signs] relating to noncommercial as well as commercial activities located on the premises, such as those of a hospital, church, club, political organization or other noncommercial institution. For example, if some organization of veterans were located on the premises where the defendant has placed his sign concerning Vietnam veterans, the requisite relationship between the sign and activities conducted on the premises would exist. Such a noncommercial message could ... be sponsored by a business conducted on the site of the sign for the purpose of advertising the business, since many advertisements contain statements of public interest not directly related to the wares sold by the sponsor but intended to attract attention or create good will for its benefit." Id.
Finally, we are mindful that, at the time the legislature added authority to regulate advertising signs and billboards and to this day, the zoning scheme sets forth broad purposes for zoning regulations. It provides in relevant part that such regulations "shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements...."[13] General Statutes § 8-2 (a) ; accord General Statutes (1930 Rev.) § 424. These purposes reflect safety and aesthetic concerns. The aforementioned **545 interpretation of advertising undoubtedly advances these purposes. The mere fact that a broader interpretation of advertising might more fully accomplish these purposes does not permit us to ignore the meaning of the term compelled under the applicable rules of construction. We are obliged to construe the grant of authority narrowly, as it is in derogation of common-law property rights. See Ugrin v. Cheshire , supra, 307 Conn. at 380, 54 A.3d 532 ; see also Schwartz v. Planning & Zoning Commission , supra, 208 Conn. at 153, 543 A.2d 1339 (zoning regulations and ordinances are in derogation of common law); City Council v. Hall , supra, 180 Conn. at 248, 429 A.2d 481 (municipality limited to power granted by state). Such a narrow construction does not create an absurd result, as claimed by the plaintiff. The legislature rationally could choose to target the predominant source of the concern. See Burns v. Barrett , supra, 212 Conn. at 184-85, 561 A.2d 1378 (exception to prohibition on advertising signs within certain proximity of off-ramp to highway on basis of population density did not refute conclusion that regulation enhanced highway safety); see also Metromedia, Inc. v. San Diego , supra, 453 U.S. at 511-12, 101 S.Ct. 2882 (exclusion of on premises advertising from regulation does not undermine state's safety and aesthetic objectives; state could believe off premises advertising is more acute problem or on premises advertising is of greater value to public).
We agree with the plaintiff that any individual sign-regardless of the nature of the message it conveys-potentially could be a distraction to drivers and could raise safety concerns if it is too big, too tall, or placed in certain locations. Cf.
*418 Burns v. Barrett , supra, 212 Conn. at 187, 561 A.2d 1378 ("[B]illboard advertisements, both commercial and noncommercial, are distracting to motorists and threaten public safety in areas where vehicles travel at very high speeds. Indeed, noncommercial messages may be more distracting because they are usually more interesting."); see generally, e.g., **546 Kroll v. Steere , 60 Conn. App. 376, 379, 759 A.2d 541 (considering regulation of twenty square foot piece of plywood with painting portraying two deer and captioned "Who Asked the Deer?"), cert. denied, 255 Conn. 909, 763 A.2d 1035 (2000). However, the plaintiff's construction would allow for the regulation of signs that plainly were not of the sort envisioned when the legislature added this grant of authority in 1931.
Undoubtedly, since the 1930s, signs reflecting purely personal expressions have gained popularity. It is not uncommon to pass a residence bearing a sign announcing a celebratory event (e.g., the birth of a child-"It's a Boy," the return of a loved one-"Welcome Home, Soldier"), a warning ("Drive Slowly-Children at Play"), or an expression of personal opinion. Although such signs may make a public announcement, we are hard pressed to characterize such expressions as advertising. To the extent that such signs may give rise to similar aesthetic and safety concerns as advertising signs, it is not up to this court to give the statute a broader meaning than the contemporaneous, common meaning intended by the enacting legislature. Cf. Harris v. United States , 536 U.S. 545, 556, 122 S.Ct. 2406, 153 L.Ed. 2d 524 (2002) (recognizing that court examines legislative intent in view of contemporaneous law, not subsequent developments in law that legislature could not have contemplated), overruled on other grounds by Alleyne v. United States , 570 U.S. 99, 103, 133 S.Ct. 2151, 186 L.Ed. 2d 314 (2013). Subsequent legislatures could have adopted a definition to expand the scope of the statute to address modern developments and practices. They failed to do so, leaving us to apply settled rules of construction. Under those rules of construction, we are bound to apply the narrower definition, consistent with the contemporaneous definition.[14]
**547 The plaintiff nonetheless asserts that the principle of legislative acquiescence supports the broad definition of public pronouncement. The plaintiff contends that the legislature should be presumed to know that many municipalities have promulgated zoning regulations that are broader than the narrow definition of "advertising signs" adopted by the trial court, and thus its failure to amend the statute evidences legislative support for these broader interpretations. The plaintiff cites no authority, however, and we are aware of none, that extends the principle of legislative acquiescence to presume the legislature's awareness of municipal legislation that has not been subjected to judicial scrutiny and that may vary in form among municipalities. Moreover, in light of our prior construction of § 8-2 in Schwartz , there would be no reason for the legislature to presume that any contrary municipal *419 construction would withstand such scrutiny.
As a fallback position, the plaintiff asserts that we should adopt the broader public announcement definition because limiting "advertising signs" to those that promote goods, services, or activities might constitute improper content based speech discrimination in violation of the first amendment to the United States constitution.[15] See **548 Reed v. Gilbert , --- U.S. ----, 135 S.Ct. 2218, 2231, 192 L.Ed. 2d 236 (2015) (restrictions on temporary signs on basis of classification of content are violation of first amendment). Admittedly, "[i]t is well established that this court has a duty to construe statutes, whenever possible, to avoid constitutional infirmities ...." (Internal quotation marks omitted.) James v. Commissioner of Correction , 327 Conn. 24, 42, 170 A.3d 662 (2017). However, "it is appropriate to place a judicial gloss on a statutory provision only if that gloss comports with the legislature's underlying intent.... When, as in the present case, however, such a gloss is not consistent with the intent of the legislature as expressed in the clear statutory language, we will not rewrite the statute so as to render it constitutional." (Citation omitted.) State v. DeCiccio , 315 Conn. 79, 150, 105 A.3d 165 (2014) ; accord Clark v. Martinez , 543 U.S. 371, 381-82, 125 S.Ct. 716, 160 L.Ed. 2d 734 (2005). Here, the evidence compels the conclusion that the legislature intended a narrower definition than the one advanced by the plaintiff. Moreover, the plaintiff's constitutional arguments rest on first amendment case law that developed decades after the statute was enacted.[16] See, e.g., Metromedia, Inc. v. San Diego , supra, 453 U.S. at 505, 101 S.Ct. 2882 ("[p]rior to 1975, purely commercial advertisements of services or goods for sale were considered to be outside the protection of the [f]irst [a]mendment"). As the United States Supreme Court has noted, interpreting a statute to conform to subsequent developments in the law would improperly "embrace a dynamic view of statutory interpretation, under which the text might mean one thing when enacted and yet another if the prevailing view of the [c]onstitution later changed." Harris v. United States , supra, 536 U.S. at 556, 122 S.Ct. 2406. **549 Insofar as the plaintiff's argument can be construed as a direct constitutional challenge to a narrow construction of the statute, the relief that would be afforded to a proper party to make this claim-a person whose speech was restricted by the zoning regulations[17] -would be to strike down, limit, or refuse to apply the offending grant of authority, not to expand the reach of the statute to other forms of expression. See State v. Williams , 205 Conn. 456, 473, 534 A.2d 230 (1987) ("this *420 court has the power to construe state statutes narrowly to comport with the constitutional right of free speech" and "[t]o avoid the risk of constitutional infirmity"); see also Metromedia, Inc. v. San Diego , supra, 453 U.S. at 503, 513, 521, 101 S.Ct. 2882 (striking down ordinance that permitted on premises commercial advertising but did not permit noncommercial messages).
For the foregoing reasons, we conclude that the phrase "advertising signs" under § 8-2 means any form of public announcement intended to aid directly or indirectly in the sale of goods or services, in the promulgation of a doctrine or idea, in securing attendance, or the like.
In light of that conclusion, it is apparent that the defendant's signs in the present case are not advertising signs. The defendant's message is not aimed at the sale of goods, the promulgation of a doctrine or idea, securing attendance, or the like. Nor is any activity or enterprise of the defendant benefited by any action of the recipient of the message. Rather, the defendant is expressing her personal, derogatory opinion of her home improvement contractor and citing prior lawsuits allegedly brought against the contractor to show that her unfavorable opinion is shared by others. Although **550 she might obtain personal satisfaction if her sign deters other homeowners from hiring the named contractor, it is not the sort of benefit fostered by advertising as we have interpreted the term. Therefore, the trial court properly concluded that the city lacked authority to regulate the defendant's signs.
II
We next turn to the plaintiff's challenge to the trial court's decision denying the plaintiff's request for an injunction precluding the defendant from occupying her residence until she obtained a new certificate of occupancy following the modifications to her residence. The plaintiff contends that the court improperly focused on why the defendant did not have a certificate of occupancy rather than whether she had the certificate required by the zoning regulations. We conclude that the trial court did not abuse its discretion in denying this request.
The record reflects the following additional undisputed facts and procedural history. City zoning regulations impose several obligations on a property owner having home renovations performed. The owner must submit an application and plot plan, reflecting the proposed changes to the property, to procure a zoning permit from the zoning enforcement officer. Milford Zoning Regs., art. VIII, § 8.5. Once renovations have been completed, the owner must submit an " 'as built' " certified plot plan, reflecting the actual work performed, to the zoning enforcement officer. Id., § 8.8. Only after doing so may the owner apply for a certificate of zoning compliance from the zoning enforcement officer and a certificate of occupancy from the building inspector. Id. A certificate of zoning compliance is a necessary prerequisite to a certificate of occupancy, and the zoning regulations prohibit occupation of a residence without a certificate of occupancy. Id., § 8.9.
**551 In the present case, after the plaintiff received complaints concerning the defendant's signs about her home improvement contractor, the plaintiff reviewed the file pertaining to the defendant's property. That review revealed that the defendant had obtained two building permits for renovations to her residence, but had not subsequently filed the submissions to obtain a new certificate of occupancy. The plaintiff sent a letter to the defendant notifying her that she had not "turn[ed] in as-builts for the two permits that have not been inspected *421 and ha[d] not yet received [c]ertificates of [z]oning [c]ompliance or [c]ertificates of [o]ccupancy," and ordering her to do so. Several months later, the plaintiff sent a second letter to the defendant, ordering her to "obtain [c]ertificates of [z]oning [c]ompliance and [c]ertificates of [o]ccupancy within ten ... days of the date of this order or vacate the premises." When the defendant still did not comply with the orders, the plaintiff brought the present action, seeking an injunction precluding the defendant from occupying the premises and ordering her to immediately obtain a certificate of zoning compliance and a certificate of occupancy. The plaintiff also sought civil penalties under General Statutes § 8-12 for the defendant's failure to comply with the order to remedy the stated violations. The complaint simply alleged that the defendant was occupying the premises without a certificate of zoning compliance or certificate of occupancy and had failed to comply with orders to comply with city regulations, and the two orders were attached as exhibits.
Trial on the action did not take place until almost four years after the complaint was filed. The following events ensued during the intervening period. Three years after the plaintiff commenced the present action, the defendant provided an as built plot plan to the plaintiff. Both the initial plot plan and a subsequent one submitted by the defendant contained substantive **552 errors. Nearly four years after the commencement of the action, the defendant submitted an adequate plot plan. The plaintiff reviewed the plot plan and determined that the renovations, as completed, violated city zoning regulations for maximum lot coverage. As a consequence, the plaintiff declined to issue a certificate of zoning compliance, and, in turn, the building inspector refused to issue a certificate of occupancy. The plaintiff did not amend the complaint to include an allegation regarding the zoning violation for lot coverage.
The trial court found that the defendant had violated the zoning regulations because she did not have the requisite certificate of occupancy, but it nonetheless declined to grant the plaintiff's request for injunctive relief. The court found that the defendant could do nothing more to secure the certificate. The trial court credited the defendant's testimony that she had relied on her contractor to submit the necessary paperwork. Although extremely tardy, the defendant had submitted the required as built plot plan. The court further noted that, because the plaintiff had not followed the normal procedure for a zoning violation, the defendant had been deprived of administrative remedies related to the ground on which the plaintiff had refused to issue the certificate, namely, noncompliance with maximum lot coverage. Had the proper procedure been followed, the plaintiff would have provided notice to the defendant of that violation as well as a cease and desist order, which in turn would have entitled the defendant to review by the zoning board of appeals. Although the trial court concluded that injunctive relief should not issue, it ordered the defendant to pay a civil penalty of $1000 due to the fact that it had taken her more than four years to submit a proper as built plot plan.
It is well settled that we review a decision of the trial court to deny injunctive relief for an abuse of discretion.
**553 Waterford v. Grabner , 155 Conn. 431, 434-35, 232 A.2d 481 (1967). "A decision to grant or deny an injunction must be compatible with the equities in the case, which should take into account the gravity and willfulness of the violation, as well as the potential harm to the defendant." Bauer v. Waste Management of Connecticut, Inc. , 239 Conn. 515, 527, 686 A.2d 481 (1996).
*422 "In seeking an injunction pursuant to [General Statutes] § 8-12, the town is relieved of the normal burden of proving irreparable harm and the lack of an adequate remedy at law because § 8-12 by implication assumes that no adequate alternative remedy exists and that the injury was irreparable.... The town need prove only that the statutes or ordinances were violated.... The proof of violations does not, however, deprive the court of discretion and does not obligate the court mechanically to grant the requested injunction for every violation ." (Citations omitted; emphasis added.) Gelinas v. West Hartford , 225 Conn. 575, 588, 626 A.2d 259 (1993).
In the present case, the trial court found that, even though the fact that the defendant was in violation of the zoning regulations because she did not have a certificate of occupancy, the factual circumstances did not support the "extraordinary equitable remedy" of a permanent injunction prohibiting the defendant from occupying her premises. In light of the reasons stated by the trial court, we cannot conclude that it abused its discretion by denying the requested injunctive relief.
The judgment is affirmed.
In this opinion the other justices concurred.

Although § 8-2 has been amended by the legislature several times since the events underlying the present case; see, e.g., Public Acts 2015, No. 15-227, § 25; those amendments have no bearing on the merits of this appeal.

Kathleen Kutcha, the named plaintiff, was the Milford zoning enforcement officer when this case was commenced. While the case was pending before the trial court, Kutcha retired, and her successor, Stephen H. Harris, was substituted as the plaintiff.

The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Milford regulations place additional limitations on temporary signs that differ based on their content, including political signs, commercial advertising signs, and signs advertising cultural and civic events. See Milford Zoning Regs., art. V, § 5.3.3.4. These content based distinctions are not at issue in the present case.

In addition to rebutting the plaintiff's argument directly, the defendant asserts that (1) even if the court were to adopt the plaintiff's broad definition of advertising signs, the city's regulations would exceed the city's authority because § 8-2 does not permit regulation of the number of signs and, (2) as an alternative ground for affirmance, application of the zoning regulations to the defendant would violate her first amendment rights. Because we conclude that § 8-2 does not authorize the city to regulate the defendant's signs, we do not reach these issues.

We also observe that, in Schwartz , the court quoted two definitions, each of which conforms to one proposed by a party in the present case. See Schwartz v. Planning & Zoning Commission , supra, 208 Conn. at 155, 543 A.2d 1339. It appears that the court in Schwartz applied the narrower definition because its use of the phrase "arouse the desire"; id. ; more closely hewed to the use of the phrase "attracting attention" in the town's zoning regulation. Id., at 153, 543 A.2d 1339.

Consistent with the discussion in Schwartz ; see footnote 6 of this opinion; modern dictionaries include a broad definition of "advertise," as well as a narrower one focused on the promotion of goods or services. See Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 59 ("to make something known to," "to make publicly and generally known," "to announce publicly esp[ecially] by a printed notice or a broadcast," and "to call public attention to esp[ecially] by emphasizing desirable qualities so as to arouse a desire to buy or patronize"); The Random House Dictionary of the English Language (2d Ed. 1987) p. 29 ("advertising" means "the act or practice of calling public attention to one's product, service, need, etc., esp[ecially] by paid announcements in newspapers and magazines, over radio or television, on billboards, etc."); The American Heritage Dictionary of the English Language (1978) p. 19 ("[t]o make public announcement of; especially, to proclaim the qualities or advantages of [a product or business] so as to increase sales"; "[t]o call the attention of the public to a product or business").

When this meaning is ascribed to "advertising signs," it results in a meaning consistent with its companion term-"billboards." Although billboards predominantly display commercial messages, they also have been used to promote noncommercial messages, including political and religious messages. Indeed, although not common around the time period when the zoning statute was amended to add this authority, there is evidence that billboards were used to promote noncommercial causes at that time. See E. Berry, "The Call of the Billboard," The Atlantic, July 7, 2016, available at http://www.theatlantic.com/technology/archive/2016/07/the-call-of-thebillboard/490316/ (last visited July 13, 2018) (discussing existence of an "advertising agency of religious work" in 1908, which encouraged churches to erect religious signs to "meet the people [half way] with the Gospel message" [internal quotation marks omitted] ).

Modern definitions of "sign" reflect a similar distinction. See Webster's II New World College Dictionary (3d Ed. 2005) p. 1051 ("board, poster, or placard displayed in a public place to advertise, impart information, or give directions); Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) pp. 1158-59 ("a display ... used to identify or advertise a place of business or a product," "a posted command, warning, or direction," and "signboard"); Webster's Third New International Dictionary (2002) p. 2115 (a lettered board or other public display placed on or before a building ... to advertise the business there transacted" and "a conspicuously placed word or legend [as on a board or placard] of warning ... or other information of general concern"); see also Regs., Conn. State Agencies § 13a-123-2 (h) (defining " '[s]ign' " for purposes of Department of Transportation regulations as including "any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard or other thing which is designed, intended or used to advertise or inform").

Insofar as the plaintiff contends that construing "advertising" to mean making the expression visible to the public would avoid rendering the term superfluous, we also observe that numerous dictionaries define "sign" in a manner to mean a public display. See footnote 9 of this opinion

Contemporaneous case law from other jurisdictions is replete with evidence that the proliferation of commercial signs, especially billboards, raised significant aesthetic, as well as safety and health, concerns across the country, leading many jurisdictions to adopt similar legislation allowing for the regulation of advertising signs and billboards. See Murphy, Inc. v. Westport , 131 Conn. 292, 295-98, 40 A.2d 177 (1944) (comparing cases from other jurisdictions where regulation of advertising signs solely on basis of aesthetic concerns was deemed improper with those cases where regulations also based on public health or safety concerns were deemed proper); General Outdoor Advertising, Co. v. Dept. of Public Works , 289 Mass. 149, 171, 176, 182, 193 N.E. 799 (1935) (noting that, in addition to aesthetic concerns, advertising signs and billboards impact public safety because they can be dangerous to passersby if they fall into disrepair and are distracting, may negatively impact property values, and intrude upon passersby who would otherwise be able to avoid advertising in other mediums), appeal dismissed sub nom. General Outdoor Advertising Co. v. Hoar , 297 U.S. 725, 56 S.Ct. 495, 80 L.Ed. 1008 (1936) ; see also Haller Sign Works v. Physical Culture Training School , 249 Ill. 436, 443-46, 94 N.E. 920 (1911) (discussing cases from numerous jurisdictions where municipalities attempted to regulate advertising signs for purely aesthetic reasons). Scholars have traced the impetus for such regulation to the intrusion of unsightly commercial advertising, both from on premises signs and off premises billboards, after the turn of the twentieth century, as a result of the development of a national system of roads, the popular availability of automobiles, and industrial advances. See note, "Judging the Aesthetics of Billboards," 23 J.L. & Pol. 171 (2007) (collecting extensive scholarly and legal citations discussing rise of outdoor advertising and regulation thereof); see also J. Loshin, "Property in the Horizon: The Theory and Practice of Sign and Billboard Regulation," 30 Environs: Envtl. L. & Policy J. 101 (2006) (case study of New Haven's treatment of signs and billboards); see also J. Houck, Outdoor Advertising: History and Regulation (1969).

See General Statutes (Cum. Supp. 1931) §§ 89c and 90c (authorizing appropriate town board, commission or official to establish "districts or zones within which no commercial or business structure or building, including advertising signs, may be erected" unless person, firm or corporation obtains license to erect "such a structure, building or sign, or any or all of them, within such zone"); General Statutes (Cum. Supp. 1931) § 92c (providing that these statutes did not "prevent any owner of land from advertising on his land any business conducted or any products manufactured, produced or raised by him thereon").

This statement of purpose predated the grant of zoning authority to regulate advertising signs and billboards, and was not originally included in the predecessor to § 8-2. See Public Acts 1925, c. 242, §§ 2 and 3. In 1947, the legislature moved this statement of purpose into the predecessor to § 8-2. See Public Acts 1947, No. 418, § 2.

Our research has revealed only cases of recent vintage in which one jurisdiction adopted an expansive meaning of advertising signs for purposes of zoning regulations, consistent with the plaintiff's view. See Lone Star Security & Video, Inc. v. Los Angeles , 827 F.3d 1192, 1198-1200 (9th Cir. 2016) (adopting broad definition of "advertising" in context of mobile billboards in accordance with California law); Showing Animals Respect & Kindness v. West Hollywood , 166 Cal. App. 4th 815, 819-20, 83 Cal.Rptr.3d 134 (2008) (same). There is no indication in these cases that the statutory provision was enacted during the 1930s or any indication that the courts considered any rule of construction requiring strict construction.

The plaintiff appears to base his argument, in part, on the assumption that whether the expression is advertising under the narrower definition would depend on whether it expresses a positive or negative view of the subject. This assumption is flawed. A negative message could be advertising if it is intended to aid indirectly in the sale of a commodity or to advance another interest to the benefit of the proponent (e.g., a business disparaging or demeaning a competitor).

Under the facts of the present case, we need not reach the question of whether certain types of political speech would be "advertising" or whether application of specific zoning regulations to that speech would violate the first amendment. In the interim, the legislature may wish to adopt a definition of "advertising signs" to make its views clear on this matter.

The city is not being deprived of any constitutional right. See Shaskan v. Waltham Industries Corp. , 168 Conn. 43, 49, 357 A.2d 472 (1975) ("[t]he general rule is that a litigant may only assert his own constitutional rights or immunities").