******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RASPBERRY JUNCTION HOLDING, LLC *v.*
SOUTHEASTERN CONNECTICUT
WATER AUTHORITY
(SC 19974)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant municipal water
authority, S Co., for the loss of revenue resulting from the interruption
of water service at its hotel property. The plaintiff alleged that the
interruption was caused by S Co.'s negligence in its maintenance and
operation of a pumping station. S Co. had been created by a special act
of the General Assembly (33 Spec. Acts 478, No. 381 [1967]) that set
forth S Co.'s powers and duties, including the power to be sued and
the power to make rules for the "sale of water and the collection of
rents and charges therefor." S Co. thereafter adopted rules governing
its water service, including a rule limiting its liability for its negligence
in supplying water. Citing that rule, S Co. moved for summary judgment
on the ground that it was immune from liability for the plaintiff's damages
and that the rule was a proper exercise of its authority under the special
act's grant of power to make rules for the sale of water and the collection
of rents and charges. The plaintiff opposed the motion, claiming that S
Co., as a municipal corporation engaged in a proprietary function, was
not immune from suit and that the special act did not provide any
authority, express or implied, to promulgate rules that waive liability
for negligence. The trial court recognized that, generally, S Co. could
be sued like a private water company but that, as an administrative
agency, it had the power to promulgate regulations having the force
and effect of law. The court, relying on authority from other jurisdictions,
determined that reasonable rates for the provision of water services
depended in part on a rule limiting liability, enforceable only to the
extent that ordinary negligence was involved. The trial court therefore
found that S Co.'s rule limiting liability for service outages was a reason-
able exercise of its rule-making authority, and, because the plaintiff
alleged only ordinary negligence, the rule limiting S Co.'s liability was
enforceable as to the plaintiff's action. In light of this conclusion, the
court did not address S Co.'s alternative ground for summary judgment,
granted S Co.'s motion for summary judgment, and rendered judgment
thereon, from which the plaintiff appealed. *Held* that the trial court
improperly granted S Co.'s motion for summary judgment on the ground
that S Co. had the authority to promulgate a rule that limited its liability
for disruptions to water service, and, accordingly, the judgment was
reversed and the case was remanded for consideration of the defendant's
alternative ground for summary judgment: it was clear, from the text
of the special act, that the legislature did not expressly empower the
defendant to promulgate a rule immunizing itself from liability for the
failure to supply water, and the defendant's authority to limit its liability
for the negligent disruption of water could not be necessarily implied,
as there was no textual or rational basis in the special act to infer that
such authority was necessary to effectuate any other authority expressly
conferred, the imposition of liability for the disruption of water service
would not impair S Co.'s authority to set rates and sell water, or impair
the ability of S Co. to set rates sufficient to cover costs, and S Co.
was not subject to comprehensive regulation of its rates, services and
facilities by the state's public utilities regulatory authority and, therefore,
faced no impediment to setting rates sufficient to cover the cost of
insurance or its liability in the absence of insurance; moreover, S Co.'s
reliance on both the special act's catchall provision granting S Co. the
power to do all things necessary or convenient to carry out the provisions
of the special act and the act's statement of purpose did not provide S
Co. with authority to limit its liability for the disruption of water service.

Argued November 13, 2018—officially released April 9, 2019

*Procedural History*

Action to recover damages sustained as a result of the alleged negligence of the defendant, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Vacchelli, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed. *Reversed*; *further proceedings*.

*Santa Mendoza*, for the appellant (plaintiff).

*Stephanie S. Berry*, with whom were *Ryan L. McLean* and, on the brief, *Lloyd L. Langhammer*, for the appellee (defendant).

*Opinion*

McDONALD, J. The dispositive question in this appeal is whether the special act creating the defendant, Southeastern Connecticut Water Authority, authorized the defendant to promulgate a rule immunizing itself from liability for failures or deficiencies in its supply of water to its customers. The plaintiff, Raspberry Junction Holding, LLC, appeals from the trial court's judgment rendering summary judgment in favor of the defendant on the basis of such a rule. We reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The defendant was created in 1967 by a special act of the General Assembly as a body politic and corporate of the state, designated to perform the "essential government function" of planning, operating, and maintaining a water supply system for the benefit of the southeastern Connecticut planning region. 33 Spec. Acts 478, No. 381 (1967) (special act).[1] Section 14 of that act sets forth the powers and duties conferred on the defendant, including "the power: (a) to sue and be sued . . . (i) to make . . . rules for the sale of water and the collection of rents and charges therefor . . . (m) to fix rates and collect charges . . . such as to provide revenues sufficient at all times to pay . . . the princip[al] and interest on the bonds or notes of the authority together with the maintenance of proper reserves, in addition to paying . . . the expense of operating and maintaining the properties of the authority together with proper reserves for depreciation, maintenance and contingencies and all other obligations and indebtedness of the authority . . . (p) to do all things necessary or convenient to carry out the powers expressly given in this act . . . ." 33 Spec. Acts 481, 483–84, No. 381, § 14 (1967).

On the basis of the authority purportedly granted to it by § 14 of the special act, the defendant adopted "Rules Governing Water Service," including rule 5, entitled "SUPPLY OF WATER." Rule 5 provides in relevant part: "It is expressly agreed that the [defendant] shall not be liable for a deficiency or failure in the supply of water or the pressure thereof for any cause whatsoever, or for any damage caused thereby, or for the bursting or breaking of any main or service pipe or any attachment to the [defendant's] property. . . ."[2]

In 2016, the plaintiff commenced the present action against the defendant, seeking damages on the basis of a loss of water service at The Bellissimo Grande Hotel in North Stonington, operated by the plaintiff. In its one count complaint, the plaintiff alleged that the hotel lost water service for several days in June, 2015, due to the explosion of a hydropneumatic tank at a pumping station operated by the defendant as a result of the defendant's negligent construction, operation, inspec-

tion or maintenance of the tank and its valves. The plaintiff further alleged that the water outage caused the plaintiff to lose revenue due to its inability to rent rooms and the need to give refunds to hotel guests during the water outage.

The defendant moved for summary judgment on two grounds. First, it contended that rule 5 immunized it from liability for the plaintiff's damages, and that the rule was a proper exercise of its authority under the special act's grant of power to make "rules for the sale of water and the collection of rents and charges therefor." See 33 Spec. Acts 483, No. 381, § 14 (i) (1967). Second, it contended that, because the plaintiff was seeking damages for monetary loss only, the claim is barred by the common-law economic loss doctrine.[3] The plaintiff opposed the motion, arguing that the defendant, as a municipal corporation engaged in a proprietary function, is not immune from suit and has no authority, express or implied, to promulgate rules that waive liability for negligence. The plaintiff also argued that the economic loss doctrine does not apply under the circumstances presented.

The trial court rendered summary judgment in favor of the defendant. The court recognized that the defendant's authority to promulgate rule 5 depended on an express or implied grant in the special act. It further recognized that, as a general matter, the defendant could be sued like a private water supply company. Nonetheless, it reasoned that, unlike a private company, the defendant is an administrative agency that has the power to promulgate regulations having the force and effect of law. On the basis of that conclusion, the court focused its analysis exclusively on the question of whether a rule limiting a water company's liability for service outages was a reasonable exercise of the defendant's rule-making authority. Finding no Connecticut authority on this question, it relied on authority from other jurisdictions holding that reasonable rates required for such services depend in part on a rule limiting liability. It also noted that other jurisdictions generally have held that such limitations on liability are enforceable only to the extent of ordinary negligence. Because the present case alleged only ordinary negligence, the court held that rule 5 was enforceable as to the present action.[4] In light of this conclusion, the court did not address the applicability of the economic loss doctrine. The plaintiff appealed from the trial court's judgment to the Appellate Court, and, pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1, we transferred the appeal to this court.

On appeal, the plaintiff renews its claim that rule 5 is unenforceable because the special act does not expressly or impliedly grant to the defendant the power to promulgate a rule limiting its liability otherwise established when it acts in its proprietary capacity. The

plaintiff further asserts that rule 5 would not be a reasonable exercise of authority because the defendant is not subject to regulation that might otherwise circumscribe its ability to set rates to cover liability costs.[5] In response, the defendant contends that rule 5 was validly promulgated pursuant to the special act's express grant of power to set reasonable rates for service and make rules for the sale of water. Alternatively, the defendant asserts that such authority is properly implied because it is necessary to carry into effect its stated purpose under the special act of benefitting the people of its region and the state, and for the improvement of their health, welfare and prosperity. The defendant also argues that rule 5 is enforceable because it is essential to its duty to set reasonable rates.

We conclude that the defendant lacked authority to promulgate a rule, such as rule 5, that immunizes it from liability for disruptions to water service. Therefore, we do not reach the issue of whether rule 5 would be a reasonable exercise of such authority.

"Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005). Because the resolution of the issue concerning the defendant's authority to promulgate rule 5 presents a question of statutory interpretation over which we also exercise plenary review, we are guided by settled principles of construction. See *Hicks* v. *State*, 297 Conn. 798, 800–801, 1 A.3d 39 (2010) (setting forth process of ascertaining legislative intent pursuant to General Statutes § 1-2z, and noting that, "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" [internal quotation marks omitted]).

In considering whether the legislature, through the special act, conferred on the defendant the authority to immunize itself from liability for failures or deficiencies in its water supply, we also must be mindful of certain settled principles that inform the nature and source of the defendant's powers. By virtue of the special act, the defendant is a municipal corporation. See, e.g., *Monroe* v. *Middlebury Conservation Commission*, 187 Conn. 476, 483, 447 A.2d 1 (1982); *Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District*, 160 Conn. 446, 450, 280 A.2d 344 (1971); see also *Sachem's Head Property Owners' Assn.* v. *Guilford*, 112 Conn. 515, 517–18, 152 A. 877 (1931) (explaining attributes of municipal corporation). As a creation of the state, a municipal corporation has no inherent legislative authority. See, e.g., *Monroe* v. *Middlebury Conservation Commission*, supra, 484. Rather, "[i]t can exercise only such powers as are expressly granted or necessarily implied to enable it to carry into effect the objects and purposes of its creation." Id. "In determining

whether a municipality has the authority to adopt a challenged . . . provision, we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment." (Internal quotation marks omitted.) *Simons* v. *Canty*, 195 Conn. 524, 530–31, 488 A.2d 1267 (1985).

It is clear from the text of the special act that the legislature did not expressly empower the defendant to promulgate a rule immunizing itself from liability for the failure to supply water. To the contrary, § 14 specifically provides that the defendant may "be sued . . . ." See 33 Spec. Acts 481, No. 381, § 14 (a) (1967). This provision appears to incorporate long-standing, common-law principles, since codified in large part, dictating the contours of a municipality's liability and immunities. See *Considine* v. *Waterbury*, 279 Conn. 830, 841–44, 905 A.2d 70 (2006) (setting forth common-law principles of municipal immunity and recognizing that General Statutes § 52-557n codified common-law rule and exceptions to immunity). One such principle provides that a political subdivision is immune from liability when it is engaged in the performance of a public duty for the public's benefit but may be subject to liability for negligent acts committed in its proprietary capacity. Id., 842; see General Statutes § 52-557n (a) (1);[6] *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 56, 881 A.2d 194 (2005) (requiring inextricable link or inherently close connection between specific allegations of negligence and alleged proprietary function). "[I]t is assumed that all legislation is interpreted in light of the common law at the time of its enactment." (Internal quotation marks omitted.) *State* v. *Courchesne*, 296 Conn. 622, 669, 998 A.2d 1 (2010); see also *Pacific Ins. Co., Ltd.* v. *Champion Steel, LLC*, 323 Conn. 254, 265, 146 A.3d 975 (2016) ("[i]t is axiomatic that the legislature is presumed to be aware of the common law when it enacts statutes"). Indeed, "[i]n determining whether . . . a statute abrogates or modifies a [common-law] rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters *clearly brought within its scope*." (Emphasis added; internal quotation marks omitted.) *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 265, 757 A.2d 526 (2000); see *Kuchta* v. *Arisian*, 329 Conn. 530, 535, 187 A.3d 408 (2018) (because grant of municipal authority to enact zoning regulations is in derogation of common law, "this grant of authority should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction" [internal quotation marks omitted]).

One example of such a clear expression is found in § 28 of the special act. That section immunizes the defendant's members from personal liability for torts committed while acting within the scope of their authority. See 33 Spec. Acts 492, No. 381, § 28 (1967) ("[n]ei-

ther the members of the authority, nor any person acting in its behalf, while acting within the scope of their authority, shall be subject to any personal liabilities resulting from the erection, construction, reconstruction, maintenance or operation of the properties or any of the improvements of the authority or from carrying out any of the powers expressly given in this act").[7] There is no other language in the special act expressly addressing the subject of liability or immunity.

The defendant's reliance on the special act's express grant of power to "make . . . rules for the sale of water" and to "fix rates . . . to provide revenues sufficient [to meet its financial obligations]"; 33 Spec. Acts 483–84, No. 381, § 14 (i) and (m) (1967); reflects a fundamental misunderstanding of the clarity required to evidence such an express grant. See *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013) ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly" [internal quotation marks omitted]). The degree of clarity required to manifest such an express intent would be especially high given the language of the special act that unambiguously makes the defendant amenable to suit. See 33 Spec. Acts 481, No. 381, § 14 (a) (1967).

Moreover, even if we were to assume, without deciding, that the grant of authority to "make . . . rules for the sale of water" indicates an intent to confer lawmaking authority on the defendant,[8] providing immunity to the defendant for its negligent disruption of water service would not expressly constitute a rule "for the sale of water." The relationship between the sale of water and liability for disruption to water service is too attenuated. If the defendant's construction prevailed, every municipality and municipal corporation authorized to regulate a given matter would have express authority to immunize itself for its negligence in the performance of those matters. Such an absurd result would largely obliterate § 52-557n and its common-law foundation. See footnote 6 of this opinion.

Because there is no explicit authorization in the special act, rule 5 can stand only if the defendant's authority to immunize itself from negligent disruption of water supply can be "necessarily implied to enable it to carry into effect the objects and purposes of its creation." *Monroe* v. *Middlebury Conservation Commission*, supra, 187 Conn. 484. In considering this question, we underscore that "[m]unicipal corporations are more strictly limited in respect to their implied power than private corporations. The test of their right by implication to exercise any particular power is the necessity of such power, not its convenience." *Wallingford* v. *Wallingford*, 15 Conn. Supp. 344, 347 (1948); see also *City Council* v. *Hall*, 180 Conn. 243, 248, 429 A.2d 481 (1980). "Necessary implication refers to a logical neces-

sity; it means that no other interpretation is permitted by the words of the [statute] construed; and so has been defined as an implication which results from so strong a probability of intention that an intention contrary to that imputed cannot be supported." *United States* v. *Jones*, 204 F.2d 745, 754 (7th Cir.), cert. denied, 346 U.S. 854, 74 S. Ct. 67, 98 L. Ed. 368 (1953). "If there is reasonable doubt as to the existence of the power, it does not exist. . . . Any doubt or ambiguity arising out of the question as to whether or not a municipal corporation has certain powers by implication must be resolved in favor of the public." (Citations omitted.) *Wallingford* v. *Wallingford*, supra, 347; see also *Pratt* v. *Litchfield*, 62 Conn. 112, 118, 25 A. 461 (1892).

We find no textual or rational basis to infer that such authority is necessary to effectuate any other authority expressly conferred. Liability for the negligent disruption of water supply services would not impair the defendant's *authority* to set rates and sell water. Nor is there any basis to conclude that the impact of such liability would impair the defendant's ability to set rates sufficient to cover costs, the sole limitation imposed under the special act.[9] The defendant readily could minimize the impact of such liability by engaging in the common business practice of procuring insurance, which would allow the defendant to plan its business and pass along its costs to the consumer.

Moreover, the defendant is not subject to comprehensive regulation of its rates, services, and facilities by this state's public utilities regulatory authority. See 33 Spec. Acts 490, No. 381, § 24 (1967).[10] It faces no impediment to setting rates sufficient to cover the cost of insurance or its liability in the absence of insurance. It is not compelled to serve customers regardless of their ability to pay for services. As such, the case law from other jurisdictions on which the trial court relied, which involved water authorities subject to such regulatory restrictions and thus implicated a corresponding public policy justification for the right to limit liability, are inapposite.[11] See *Los Angeles Cellular Telephone Co.* v. *Superior Court*, 65 Cal. App. 4th 1013, 1018, 76 Cal. Rptr. 2d 894 (1998) ("it is an equitable trade-off—the power to regulate rates and to set them below the amount an unregulated provider might otherwise charge requires a concomitant limitation on liability"); see also *Fax Telecommunicaciones*, *Inc.* v. *AT&T*, 138 F.3d 479, 489 (2d Cir. 1998) (liability limitation provisions serve two goals—prevention of price discrimination among rate payers and preservation of regulatory agencies' roles in deciding reasonable rates for public utilities and services); *Adams* v. *Northern Illinois Gas Co.*, 211 Ill. 2d 32, 57, 809 N.E.2d 1248 (2004) ("Liability limitations reflect: the status of public utilities as regulated monopolies whose operations are subject to extensive restrictions; the requirements of uniform, nondiscriminatory rates; and the goal of universal ser-

vice, achieved through the preservation of utility prices that virtually all customers can afford. . . . The underlying theory of liability limitations is that, because a public utility is strictly regulated, its liability should be defined and limited so that it may be able to provide service at reasonable rates. A reasonable rate is in part dependent on a rule limiting liability. . . . The goal is to secure reasonable and just rates for all without undue preference or advantage to any. Since that end is attainable only by adherence to the approved rate, based upon an authorized classification, that rate represents the whole duty and the whole liability of the company." [Citations omitted; internal quotation marks omitted.]).

Finally, the defendant cites both the special act's catchall provision, granting it the power to "do all things necessary or convenient to carry out the powers expressly given in this act"; 33 Spec. Acts 484, No. 381, § 14 (p) (1967); and its statement of purpose, creating the defendant to benefit the people of its region and the state and to improve their health, welfare and prosperity; 33 Spec. Acts 481, No. 381 § 1 (1967); but does not explain how either provides the requisite authority. We previously explained why it is not necessary to immunize the defendant from liability to carry out the powers granted and that mere convenience is not enough. Moreover, we previously have required a clearer relationship between a general statement of purpose and the authority claimed. See *Kuchta* v. *Arisian*, supra, 329 Conn. 544–45 (This court noted the expansive safety and aesthetic purposes of zoning regulations but concluded that "[t]he mere fact that a broader interpretation of advertising might more fully accomplish these purposes does not permit us to ignore the meaning of the term compelled under the applicable rules of construction. We are obliged to construe the grant of authority narrowly, as it is in derogation of common-law property rights."). Indeed, it is hardly conceivable that the legislature would have delegated to one of its creations the wholesale power to establish its own public policy with regard to its exposure to liability by virtue of such aspirational terms. See generally *Simons* v. *Canty*, supra, 195 Conn. 532 ("[w]e have consistently rejected claims that municipalities may exercise important functions based solely on their power to promote good government"). The legislature has established the public policy of this state with regard to municipal liability, and, "[i]n areas where the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature." *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987).

We conclude that the trial court improperly granted the defendant's motion for summary judgment on the basis of immunity under rule 5. Therefore, the trial court must consider the defendant's alternative ground for summary judgment on the basis of the economic loss

doctrine.

The judgment is reversed and the case is remanded for further proceedings in accordance with the preceding paragraph.

In this opinion the other justices concurred.

[1] The special act has been amended several times since 1967. See, e.g., 37 Spec. Acts 222, No. 133 (1973); Public Acts 2002, No. 02-76. The changes effected by those amendments, however, are not relevant to this appeal. All references herein are to the 1967 special act.

[2] The record does not reflect whether rule 5 was adopted when the defendant initially adopted its rules governing service in 1969, or some time thereafter.

[3] The economic loss doctrine or rule, generally characterized, reflects the principle that a plaintiff cannot sue in tort for purely monetary loss unaccompanied by physical injury or property damage. See generally *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 661 n.15, 126 A.3d 569 (2015); Black's Law Dictionary (9th Ed. 2009) p. 590. We have found it unnecessary thus far to decide whether "we should adopt the economic loss doctrine as a categorical bar to claims of economic loss in negligence cases without property damage or physical injury." (Internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, supra, 648 n.8.

[4] The trial court recognized that rule 5 purported to limit the defendant's liability beyond that caused by ordinary negligence but noted that the fact that the rule may be unenforceable in other circumstances would not be dispositive in the present case.

[5] The plaintiff also claims that the defendant, as a municipal corporation, is liable, pursuant to General Statutes § 52-557n (a) (1) (B), for damages caused by its negligence in the performance of its proprietary function of selling water. See *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 53, 881 A.2d 194 (2005). We do not reach this issue as governmental immunity was not a basis for the defendant's motion for summary judgment.

[6] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit . . . ." Section 52-557n was enacted almost two decades after the legislature enacted the special act. See Public Acts 1986, No. 86-338, § 13.

At oral argument before this court, the defendant asserted that the preface to subdivision (1), the phrase "[e]xcept as otherwise provided by law," acknowledges that a municipal corporation with the power to promulgate rules having the force and effect of law can adopt such rules to bar liability otherwise imposed by statute. We disagree. Although this savings clause includes common-law doctrines that implicate the liabilities and immunities of municipalities; see *Grady* v. *Somers*, 294 Conn. 324, 334, 984 A.2d 684 (2009); the statute prescribes the rule, and, therefore, a coequal governmental body must also prescribe the exception, or at least the legislature must clearly delegate the power to do so to another body with legislative powers.

[7] Such a clear expression would abrogate the common-law rule. See *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 193, 592 A.2d 912 (1991) (at common law, "municipal officers were liable for their own torts"); *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165, 544 A.2d 1185 (1988) (at common law, municipal employees faced "the same personal tort liability as private individuals").

Insofar as the defendant argues that the plaintiff cannot rely on section 28 because it is limited on appeal to the language in the special act that it relied on before the trial court, namely, the defendant's authority to "be sued," the defendant confuses a claim with authority or evidence in support of a claim. Even if a party fails to bring such authority or evidence to an appellate court's attention, the court would be free to consider any such relevant matter.

[8] Cf. General Statutes § 7-130d (b) (empowering authority that was created by municipal ordinance as public body politic and corporate of state under General Statutes § 7-130b "to make and, from time to time, amend and repeal bylaws, rules and *regulations* not inconsistent with general law to carry out its purposes" [emphasis added]); General Statutes § 7-148 (b) and (c) (requiring municipality to exercise powers conferred on it by ordinance when exercise has effect of creating permanent local law of general applica-

bility and conferring power to regulate various matters).

[9] The defendant repeatedly mischaracterizes the special act as requiring it to set "reasonable" rates, but the special act simply requires rates to be sufficient to cover operating expenses.

[10] Section 24 of the special act provides in relevant part that "[n]either the public utilities commission nor any other board or commission of like character shall, unless expressly authorized herein, have jurisdiction over the authority in the management and control of its properties or operations or any power over the regulations of the rates fixed or charges collected by the authority. . . ." 33 Spec. Acts 490, No. 381, § 24 (1967). There is no provision in the special act expressly granting to the public utilities commission power over the rates fixed or charges collected by the defendant. Cf. 33 Spec. Acts 482, No. 381, § 14 (d) (1967) (expressly granting public utilities commission authority to approve any purchase by defendant of existing water supply systems).

[11] Other cases cited by the defendant in support of its position that its authority to promulgate rule 5 derives from the defendant's power to set reasonable rates for service and to make rules for the sale of water are similarly inapposite. In those cases, the regulated utility was protected by a liability limiting policy adopted by the regulatory commission pursuant to its broad supervisory and regulatory powers. See *Waters* v. *Pacific Telephone Co.*, 12 Cal. 3d 1, 4, 10, 523 P.2d 1161, 114 Cal. Rptr. 753 (1974) (award of damages against regulated public utility is contrary to policy of limiting liability that was adopted by regulatory commission); *Danisco Ingredients USA, Inc.* v. *Kansas City Power & Light Co.*, 267 Kan. 760, 765–68, 986 P.2d 377 (1999) (determining that regulatory commission had authority to approve liability limiting tariffs as integral part of its rate-making process); *Bulbman, Inc.* v. *Nevada Bell*, 108 Nev. 105, 106–10, 825 P.2d 588 (1992) (regulated public utility was immune from negligence action on basis of generally applicable liability limiting tariff promulgated by public service commission); see also *Landrum* v. *Florida Power & Light Co.*, 505 So. 2d 552, 553–54 (Fla. App.) (setting forth public policy of Florida that recognizes validity of liability limiting tariffs approved by that state's regulatory commission), review denied, 513 So. 2d 1061 (Fla. 1987).

---