******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring. I concur in the result reached by the majority, but I write separately to express my view that we have started down the wrong road by deciding economic loss cases using what the majority accurately refers to as "the well established [four factor, duty] test first articulated in *Jaworski* v. *Kiernan*, 241 Conn. 399, 404, 696 A.2d 332 (1997) . . . ." That test may have been helpful for resolving the idiosyncratic issue presented in that case, namely, whether participants in a team contact sport owe each other a duty of care, but it has limited applicability outside of that context. The *Jaworski* test is particularly ill-suited to a case like the present one, which involves economic loss unaccompanied by personal injury or property damage, and raises very different policy and doctrinal issues from those confronted in *Jaworski*. Unfortunately, a formulation that was fabricated for narrow application in one specific and peculiar context nearly twenty-five years ago has since been uncritically adopted by this court as a one-size-fits-all test for deciding the policy prong of the duty analysis in *all* negligence cases, including economic loss cases like the present one. There are far better and more sophisticated tools available for this purpose, and I am hopeful that future cases will provide us with the opportunity to use them.

Before I proceed, I emphasize that I do not fault the majority for applying the *Jaworski* test in this case. The parties did not offer any alternative analysis to address the policy issues underlying the legal question on appeal. And their advocacy choice is understandable because this court has signaled that *Jaworski* provides the proper framework for determining whether a plaintiff may recover damages for purely economic losses caused by a defendant's alleged negligence. See *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 650–51, 126 A.3d (2015). Nor, when we had the chance to do so, did we redirect the parties or suggest a different approach when this case first appeared before us on appeal. See *Raspberry Junction Holding, LLC* v. *Southeastern Connecticut Water Authority*, 331 Conn. 364, 368 n.3, 378, 203 A.3d 1224 (2019) (stating that we have not yet decided whether to adopt economic loss doctrine, citing *Lawrence*, and remanding case for adjudication of defendant's claim that damages for purely economic loss are barred by that doctrine). So here we are.

It is necessary to review *Jaworski* to understand why its four factor test provides a poor framework for deciding whether policy considerations favor or disfavor allowing recovery in negligence for pure economic loss. The plaintiff in *Jaworski* sustained personal injuries playing in a coed recreational soccer league when an

opposing player made contact with her during a game. *Jaworski* v. *Kiernan*, supra, 241 Conn. 400. She filed an action in two counts against the player who caused her injuries, alleging negligence and recklessness. Id., 400–401. The jury returned a verdict in the plaintiff's favor on the negligence count and in the defendant's favor on the recklessness count. Id., 401. The issue on appeal was whether the defendant owed the plaintiff a duty of care on the basis of which liability could be imposed for ordinary negligence. See id., 407, 412.

In resolving that issue, we observed that, "[a]lthough it has been said that no universal test for [duty] ever has been formulated; [W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984)] § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." (Internal quotation marks omitted.) *Jaworski* v. *Kiernan*, supra, 241 Conn. 405. To determine whether the harm is foreseeable, we ask, "would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Internal quotation marks omitted.) Id.

But the law has long recognized that foreseeability is not enough. The court in *Jaworski* explained the underlying idea: "Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of 'the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citations omitted; internal quotation marks omitted.) Id., 406.

This brings us to the four part *Jaworski* test, which was formulated "to determine as a matter of policy the extent of the legal duty to be imposed [on] the defendant." Id., 407. The court determined that four "policy" questions were determinative of the duty inquiry: "(1) the normal expectations of participants in the sport in which the plaintiff and the defendant were engaged; (2) the public policy of encouraging continued vigorous participation in recreational sporting activities while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions."[1] Id. Applying these four factors in the context of team contact sports, we held that participants owe other players a legal duty to refrain from reckless or intentional conduct; "[p]roof of mere

negligence is insufficient to create liability." Id., 412.

My problem with the *Jaworski* test can be stated broadly or narrowly. The broad version would question the utility of the test in most negligence cases, even those involving negligence claims for personal injuries. Although the four factors enumerated in *Jaworski* may identify the right considerations for deciding the policy prong of the duty analysis in the unique factual circumstances of that case, I am doubtful that it is the right test for adjudicating the existence or scope of a duty in personal injury cases arising from other contexts.[2] A moment's reflection reveals a host of other or additional policy related considerations that courts and commentators have long consulted as part of the duty analysis in negligence cases generally.[3] To be sure, at the most abstract level, policy considerations are relevant in many cases in which courts are asked to limit, expand, or create common-law liability rules; they play a significant role in tort cases generally and negligence actions in particular. See, e.g., *Mueller* v. *Tepler*, 312 Conn. 631, 650, 95 A.3d 1011 (2014) ("[t]he issue of whether to recognize a common-law cause of action . . . is a matter of policy for the court to determine based on the changing attitudes and needs of society" (internal quotation marks omitted)). It also is true that our modern negligence jurisprudence tends[4] to treat policy questions as part of the duty analysis. See, e.g., *Greenwald* v. *Van Handel*, 311 Conn. 370, 375, 88 A.3d 467 (2014) ("this court examines policy questions in negligence cases within the analytic framework of the duty element").

But, when we descend from abstraction to examine the issues at stake in any particular case or class of cases, it is obvious that *different* policy questions are implicated in different contexts within negligence law. A wide array of policy considerations will arise depending on the type of case, and the associated doctrinal variations are correspondingly various.[5] Distinct doctrines—some duty related, some not—implicating distinct policy considerations will apply depending on the status and characteristics of the respective parties (e.g., minor or adult, trespasser or invitee), the relationship between the parties (e.g., fiduciary, custodial, or professional), the character of the alleged negligence (e.g., omission or commission), and the nature of the harm at issue (e.g., physical, emotional, economic, or a combination). The four factor *Jaworski* test does not even begin to address or account for the various policy considerations at play in many cases. Nor was it originally intended to do so.

The narrow version of this critique is confined to cases, like the present case, involving a negligence claim for pure economic loss. Whatever the utility of the *Jaworski* test in other contexts, it is ill-suited to decide whether damages for pure economic loss should be

recoverable in a negligence action because the relevant policy considerations in this particular context are so different. Judge Richard A. Posner, no stranger to cost-benefit analysis in the law, made this point more than three decades ago in a negligence case for purely economic loss involving two commercial parties. See *Rardin* v. *T & D Machine Handling, Inc.*, 890 F.2d 24, 28–29 (7th Cir. 1989) (observing that "there are . . . differences between the [personal injury] case and the [economic loss] case, whether in a stranger or in a contractual setting"). Indeed, the drafters of the Restatement (Third) of Torts viewed the differences between the two contexts as sufficiently meaningful that they chose to write one treatise covering negligence resulting in physical and emotional harm and a separate treatise addressing the legal rules that apply to unintentional conduct resulting in economic harm.[6]

One example relevant to the present case suffices for illustrative purposes. The important issue of physical safety addressed in the second *Jaworski* factor is not present at all in the present case, which involves a claim by a commercial entity seeking lost business profits. The effort to fit the square peg of the claimed economic loss into the round hole of physical health and safety is doomed to fail because the cost-benefit considerations that inform the relevant "policy" analysis in the present case do not relate to health or safety; instead, they relate to commercial concerns involving risk allocation, market alternatives, and whatever other economic consequences may flow from the proposed legal rule. Policy concerns relevant to tort law exist outside of the realm of health and safety in negligence claims for economic loss involving professional malpractice, breach of fiduciary duty, misrepresentation, and so forth. The majority in the present case does its level best—indeed, it skillfully works within the constraints of the *Jaworski* framework—to conform the factors to better address some of the relevant policy considerations, but the fact remains that the factors are ill-suited to the inquiry at hand.[7]

In the end, the demands of *Jaworski* may have caused us to lose sight of the basic facts and legal considerations relevant to this case. The plaintiff, Raspberry Junction Holding, LLC, and the defendant, Southeastern Connecticut Water Authority, have a direct, *contractual* relationship with one another, and breach of contract is the true basis of the plaintiff's claim. The tort claim is a breach of contract case dressed up in negligence garb, and it seems to me that any recovery of lost profits under these particular circumstances should be controlled by contract principles governing consequential damages. See Restatement (Third), Torts, Liability for Economic Harm § 3, p. 13 (2020) (generally, "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties"). The situation is no different than

if the defendant delivered its water by truck instead of pipeline, and its lone delivery vehicle became inoperable due to careless maintenance, with the same consequences for the plaintiff's hotel business. Indeed, "[t]he spirit of *Hadley* v. *Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854), still the leading case on the nonrecoverability of consequential damages in breach of contract suits, broods over this case . . . although the present case is a tort case rather than a contract case." *Rardin* v. *T & D Machine Handling, Inc.*, supra, 890 F.2d 26; cf. 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm, § 7, comment (d), p. 80 (2010) ("one reason the general duty of reasonable care . . . is limited to physical harm is that liability for purely economic harm in commercial cases often raises issues better addressed by contract law or by the tort of misrepresentation").

I hope that we will be presented with a legal and factual record in some future case that will permit us to consider an alternative framework for adjudicating claims of economic loss unaccompanied by personal injury or property damage.[8] In the meantime, I agree with the majority that "public policy does not support the imposition of a duty on the defendant under the circumstances of this case," and, therefore, I respectfully concur.

[1] In my view, insufficient attention has been paid to the fact that the four factor test "first articulated" in *Jaworski* was conjured out of thin air. To the best of my knowledge, the test has no discernable source in any case law from Connecticut or anywhere else. Nor was it drawn from the Restatement of Torts, scholarly commentary, or out-of-state legal authority. Although *Jaworski* cites to one of this court's earlier cases as supporting authority for the four factors, that case does not contain even the rudimentary elements of the *Jaworski* formulation. See *Jaworski* v. *Kiernan*, supra, 241 Conn. 407, citing *Maloney* v. *Conroy*, 208 Conn. 392, 400–401, 545 A.2d 1059 (1988); see also *Maloney* v. *Conroy*, supra, 400–401 (bystander to medical malpractice cannot recover damages for emotional distress caused by witnessing patient's gradual decline). To the contrary, *Maloney* emphasizes the unique nature of cases involving negligence claims for bystander emotional distress arising out of medical malpractice and affirmatively *rejects* the argument that the liability rule in that specialized context should be the same "as it is in negligence cases generally . . . ." *Maloney* v. *Conroy*, supra, 400. The court in *Maloney* observed that "[m]ost of the courts and commentators that have considered the matter . . . have recognized the necessity for imposing some rather arbitrary limitations on the right of a bystander to recover for emotional distress that are not applied in other negligence actions." Id., 400–401.

[2] This court has applied the four part *Jaworski* test in a wide range of personal injury cases that have nothing to do with team contact sports. See, e.g., *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 526–27, 544, 51 A.3d 367 (2012) (duty of fraternity to conduct safe events off premises); *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 114, 118, 869 A.2d 179 (2005) (duty to provide adequate security in parking garage). Nothing in *Jaworski*, however, indicates that the four part test was intended for general application in other areas of personal injury law. To the contrary, the test, as formulated in *Jaworski*, is not framed as a generic cost-benefit test or a broadly applicable public policy inquiry but, instead, is narrowly couched in specific terms relating only to sports related personal injuries. See *Jaworski* v. *Kiernan*, supra, 241 Conn. 408 (balancing "the relevant public policy considerations surrounding sports injuries arising from team contact sports").

[3] It is hard to know where to begin, and I will not do so here beyond quoting the following observation, written almost sixty years ago, to illustrate the basic point: "An affirmative declaration of duty simply amounts to a

statement that two parties stand in such relationship that the law will impose on one a responsibility for the exercise of care toward the other. Inherent in this simple description are various and sometimes delicate policy judgments. The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; in the case of a public agency defendant, the extent of its powers, the role imposed [on] it by law and the limitations imposed [on] it by budget; and finally, the moral imperatives which judges share with their fellow citizens—such are the factors which play a role in the determination of duty." *Raymond* v. *Paradise Unified School District*, 218 Cal. App. 2d 1, 8, 31 Cal. Rptr. 847 (1963)

[4] Policy questions are by no means confined to the duty analysis in negligence law. Examples abound. See, e.g., *Hall* v. *Burns*, 213 Conn. 446, 479, 569 A.2d 10 (1990) ("[c]onstructive notice is premised on the policy determination that under certain circumstances a person should be treated as if he had actual knowledge so that one should not be permitted to deny knowledge when he is acting so as to keep himself ignorant" (internal quotation marks omitted)); *Kowal* v. *Hofher*, 181 Conn. 355, 357–58, 436 A.2d 1 (1980) (policy determination rejecting liability for negligent provision of alcohol as part of proximate causation analysis).

[5] See, e.g., D. Owen, "Duty Rules," 54 Vand. L. Rev. 767, 773–74 (2001) ("Among the many recurring categories of cases in which courts have come to understand that negligent conduct (negligence-as-breach) should not always give rise to liability, even when the plaintiff and the risk were both entirely foreseeable, are claims involving injuries to third persons (by manufacturers, professionals, employers, social hosts providing guests with alcohol, and probation officers), harm to unborn plaintiffs, nonfeasance (involving the extent of a duty to rescue or otherwise affirmatively to act), landowner liability (to trespassers and other uninvited guests), and damage to nonphysical interests (especially emotional harm and pure economic loss). In contexts such as these, where the appropriateness of allowing recovery under the law of negligence is unclear, twentieth century courts came to recognize the importance of duty's threshold, gatekeeper role." (Footnotes omitted.)).

[6] Section 1 (1) of the Restatement (Third) of Torts, Liability for Economic Harm, provides that, in general, "[a]n actor has no general duty to avoid the unintentional infliction of economic loss on another." Restatement (Third), Torts, Liability for Economic Harm § 1 (1), p. 1. The Restatement (Third) of Torts, Liability for Economic Harm, further provides that "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." Id., § 3, p. 13. There are exceptions to these general rules, however, for, among other torts, professional negligence; see id., § 4, p. 23; negligent misrepresentation; see id., § 5, pp. 35–36; and negligent performance of services. See id., § 6, pp. 62–63.

[7] The first *Jaworski* factor (regarding the reasonable expectations of the parties) could be made relevant to the issues raised in the present case, but only under a substantially reformulated doctrine. Even then, any overlap seems more a matter of fortuity rather than doctrinal consonance. The third *Jaworski* factor (avoidance of increased litigation) appears to be designed to cut only in one direction and fails to ask how to measure the increase or whether the costs imposed may be offset by a countervailing decrease in transaction costs elsewhere in the system. The fourth *Jaworski* factor (the law in other jurisdictions) can and should be included in any analysis of this nature, but as a matter of persuasive authority rather than doctrinal command.

[8] I do not suggest any particular solution to the problems that I identify in this opinion because there has been no briefing by the parties and no deliberation among my colleagues regarding alternatives to the *Jaworski* test. I feel obligated to raise the issues (or at least justified in doing so) because, as this very case illustrates, we cannot expect trial courts or lawyers to depart from the course we have charted under *Jaworski*, at least not without an indication from this court that a different approach may be preferable.